**SPECIAL CAUSE**

Office of the Executor
DEAN RICHARD VONGERMETEN WHFIT/ESTATE
c/o 1921 Thurston Avenue, Racine, Wisconsin



TO: Rachel M. Blise: Chancellor in Equity Jurisdiction
c/o : Janet Medlock: Clerk of Court (Fiduciary Notice)
US Bankruptcy Court, Eastern District of Wisconsin
517 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202

March 21, 2022

Ch 13 Case # 21-25409-rmb
Re: Adverse Case #: 22-02024-rmb

A BILL OF COMPLAINT IN EQUITY– SPECIAL CAUSATION DECLARATION IN THE
NATURE OF AN AFFIDAVIT OF ADVERSE CLAIM  # 22-02024-rmb

Dean Richard Von Germeten, Office of the Executor for
DEAN RICHARD VONGERMETEN WHFIT/ESTATE

v.

Suzy Lindblom, COO
Planet Home Lending, LLC
321 Research Pkwy, Ste 303
Meriden, CT 06450

Terry Smith, CEO
Rushmore Loan Management Service
15480 Laguna Canyon Road, Suite 100
Irvine, California 92618

Alejandro Hoyos: Trustee
U.S. Bank National Association
8 Greenway Plaza Suite 1100
Houston, TX 77046

Christopher Drout, Mark Clauss
Gray & Associates, LLC
16345 W. Glendale Drive
New Berlin, Wisconsin 53151

Michael Dimand, Attorney
William Patacsil, Attorney
Marinosci Law Group, P.C.
16535 W. Bluemound Rd., Suite 333
Brookfield, WI 53005

FILED-MAIL
2022 MAR 22  PM 1:39
US BANKRUPTCY COURT
EASTERN DISTRICT OF WI

I, Complainant and Declarant, Dean Richard Von Germeten, a civilian, an American-state national, in original jurisdiction, representing the beneficiary to the cestui que trust, who wishes to remain private: living on an occupied, private estate, outside the military jurisdiction, occupant for the office of general executor, making special appearance on behalf of DEAN RICHARD VONGERMETEN WHFIT/estate, established ████████ do object to Planet Home Lending attorneys and US Bank Attorneys claims in US Bankruptcy court and reopening Racine County court case docket # 19-cv-001616-mjp, filing intent of Sheriff Sale, doc# 133 and this case is remanded from same for the following reasons which I hereby do attest:

1. The original alleged "debt" for loan number ████████ was cancelled per Racine County clerk of Court Jennifer Bel 1099C of September 29, 2021, and establishing DEAN R. VONGERMETEN's Creditor status, the court is hereby judicially noticed of same.

2. Complainant and Declarant has not taken out any ostensible new loan number 4402754188 with Rushmore Loan Management Services, or US Bank National Association, representing any trust. Plaintiff companies have committed mail fraud, with attorneys making only heresay claims without first-hand knowledge, evidence, witnesses or a living, injured real party-of-interest, in violation of 12 USC § 1864 out-of-state collection practices, et al. All such plaintiff claims are perjury and fraud on the court, attempting to force me into a loan modification to further raid the estate.

3. The Plaintiffs are entering Racine County and US Bankruptcy court using misnomers which are fraud on the court: Dean R. Vongermeten, JANE DOE VONGERMETEN, et al.

4. Planet Home Lending LLC COO Suzy Lindblom was defaulted and liened for failure to credit a settlement instrument; see: 26 USC § 108(e)(10) and invoiced for services rendered to the property. Furthermore; Planet Home Lending, LLC sold Petitioner's note in violation of a private novation (42 USC §1981, FRCP 8) with fees, recorded as a lien with two state apostilles, see Racine Register of Deeds document # 2603183, August 24, 2021 and doc #76 case # 21-cv-25409-rmb.

5. The Real Estate was sold to Hand of Christ Trust, See; Racine County Register of Deeds document # 2603526, August 27, 2021.

6. Bonds were filed into prior case numbers that should have settled all claims.

7. The parties are making false claims to collect on a cancelled debt, imposing peonage and involuntary servitude.

8. The attorney Mark Clauss for Gray & Associates, LLP who unlawfully filed the original foreclosure Case, committed felonies per 18 USC § 2071, WI 973.015 and 946.72(1) and Kenosha County v. Frett, 2014 WI App 12, 357.9 Wis. 2d 246, 858 N.W. 2d 397, 14-0006, by requesting expungement of over 21 documents (see doc #92, #97 case # 19-cv-001616) from Racine Register of Deeds et al aided and abetted by Matthew Lynch, CLC for WDFI and Racine county Judge Michael J. Piontek (retired) who violated my due process rights barring my substantive rights to file papers into the case to defend my interests (doc # 89) per 42 USC § 1983, 1985, 1986, 1988. A judgement is void when a judge fails to act impartially. See: Kalb v. Feuerstein (1940) 308 US 433, 60 S. Ct 343, 84 Led 370. I demand to see the bonds issued by the court and claimant attorneys indemnifying me if I'm injured by these proceedings (I have already been injured) and assignment letter by the FDIC to proceed against me and/or the property. This Bill of complaint is a trust. What have the attorneys contributed to the trust or this court? There is no statute of limitations on fraud.

9. Declarant is holder of land patent 1280113 in perpetuity. See Racine County Register of Deeds doc #: 2594701 recorded 6-29-2021.

10. A servicer/debt collector who has purchased a debt from another company has no interest in the original debt, making their status that of a mere volunteer. The right of subrogation does not arise to one who pays the debt of another as a mere volunteer. This includes attempts at collection by assignment, transfer or trade. A volunteer, stranger or intermeddler is "one who thrusts himself into a situation on his own initiative, and not one who becomes a party to a transaction upon the urgent petition of a person who is vitally interested, and whose rights would be sacrificed did he not respond to the importunate appeal." Laffranchini, 39 Nev 48, 153 P. 252. Parties may be considered volunteers if in making a payment, they have no interest of their own to protect, they act without any obligation, legal or moral, as they act without being requested to do so by the person liable on the original obligation. See: Henningsen v. United States Fidelity Guar. Co., 208 U.S. 404, 411 (1908); Smith v. State Sav. & Loan Ass'n, 175 Cal. App. 3D 1092, 1098, 223 Cal Rptr. 298, 301 (1986); Norfolk & Dedham Fire Ins. So., v. Aetna Casualty & Surety Co., 132 Vt. 341, 344, 318 A.2d 659, 661 (197).

11. Any new claims asserted by claimants are entirely bogus and without merit, attempted extortion, unjust enrichment, theft of real property, criminal malfeasance, misconduct and missuse of Declarant's name under WI 943.201(1)(b)(1). Declarant has remained in honor throughout, filing court bonds in this and other court cases to settle any outstanding claims, and demands recoupment and compensation and for violations of 12 USC § 374a, proven via index funds cusips: 808509673; SWSCX, 74254V8D7; PTBCX & 315918342; FHEAX that the alleged loan # ██████████ was securitized. 26 USC § 108(i)(4)(B) says when this occurs, there is cancellation of debt, however Complainant/Declarant was never a bank member or bank affiliate issuing stock who qualified for said "loan." The fines for violation are $100./day from 10/31/2011 to date, plus triple damages for the amount claimed, approx. $75k x 3. Further violations include 18 USC § 1005, 1006, 153 and 12 USC § 1847 and 12 USC § 1864 out-of-state collection practices with private rights of action 12 USC § 503, and false claims on the B410 form. Claimants have no evidence proving Complainant/Declarant entered into any new loan number ██████████ under a misnomer/ fictitious defendant: Dean Richard Vongermeten or otherwise and requires they produce a wet-ink signature between the parties and Power-of-Attorney signed by the Executor delegating claimants to administrate the estate, along with Fincen 8300 form memorializing the creditor/debtor relationship. Absent said evidence, Complainant/Declarant requires the Chancellor report claimants Michael Dimand, Christopher Drout, William Patacsil, Mark Clauss et al attorneys for the Plaintiffs to law enforcement for above felonies and 12 USC § 615 (for the purpose of carrying out transactions in foreign countries), 630 & 18 USC § 4 *or they pay equitable fees & damages; also sanctions and injunction against the parties to relinquish all claims to the property, cease & desist all further collection activities and further relief as this court may find equitable, not limited to proper name decree, a Bloomberg full audit of all estate assets both on and off ledger, awarding and assigning this executor all rights, titles, interests, bonds, securities, emoluments, profits, res, properties and control of the living estate, in chambers; damages, and fees cited, charges awarded per my lien/invoice, comparable attorney fees and expenses.* I am an elder disabled American under the Americans with disabilities act. Should any other corporate counsel or its employees obstruct or interfere they will be named individually in this Federal action.

12. Claimants have reopened case # 19-cv-001616-mjp in Racine County circuit court where Declarant/ Complainant was barred by the retired judge Piontek from filing papers in my own defense, hence I am remanding it to this appropriate Federal jurisdiction. Per the GPO, the Federal Reserve Act is

codified as non-positive law at 12 USC § 226, with the implementing regulations as Title 12 CFR § 211, INTERNATIONAL BANKING OPERATIONS (REGULATION K). The only permissible "mortgage banking," is restricted to 12 CFR § 211, outside the United States, and the only permissible court filings, are restricted to 12 USC § 632, in a federal court, and the defendant has to be a foreigner, and as of 1941, the (federal) Secretary of the state, has to be a party to. Corporations deriving any authority from section 25 of the Federal Reserve Act have to litigate any claim in a district court of the United States, per 12 USC § 632. US Bank is a subsidiary of U.S. BANCORP listed as an "Agreement Corporation" 12 CFR § 211, not permitted to conduct business in the United States. US Bank National Association falls under 12 USC § 632 (Federal jurisdiction.) www.sec.gov/Archives/edgar/data/36104/000119312518047256/d516835dex104.htm https://www.ibosassociation.com/banks/us-bank-national-association/ https://tinyurl.com/ymxdmxhy … https://www.law.cornell.edu/cfr/text/12/211.6

13. There was no actual loan, only a deceptive and inequitable agreement. My note was the first money exchanged for book-entry credit, from my own Federal Reserve Account, back of the SSN card, G77141861; See: Federal Reserve Circular 7, SEC 4.2.2. The note was the collateral per 12 USC § 412. "Loan" is a mischaracterization for what was essentially an inequitable exchange that created "new money" for the bank, see Modern Money Mechanics p. 6, FRB of Chicago, 1961-1992. The mortgage was securitized, evidenced by cusip numbers (above.) As an American state national and never having been a bank member or affiliate, I did not and do not qualify for said alleged "loan" but am entitled to equitable recoupment + $100./day from 10/31/2011 to date (12 USC § 374a.)

This cause was heard in prior bankruptcy court case # 20-25056-gmh and Adv. Proc. No 20-2137 by G. Michael Halfenger who abstained from awarding claimants Planet Home Lending, LLC and attorneys for, any claim. Declarant requires the Chancellor's determination what precedents apply if prior decisions are ignored. Declarant conditionally accepts claimants' claim if they can show:

1. Any agreement signed by Declarant that his note be sold, or agreed to pay a 3rd party debt collector.

2. Any agreement where Complainant authorized claimants to dun his estate or expunge documents in violation of state and federal law.

3. Any proof the alleged debt was not settled with the previous servicer, see: doc # 76, 21-25409-rmb.

4. Any proof the alleged debt for case # 19-cv-001616 was not cancelled by Jennifer Bel, court clerk.

5. Any evidence the mortgage/note does not allow early prepayment, has not expired, or the bank did not endorse the note "without recourse," that a living notary was present at closing.

6. Any proof the real estate was not sold to Hand of Christ trust.

7. Any law under 12 USC that claimants are allowed to accept deposits from American citizens within the United States or make loans to nonbank members/affiliates absent a 100% cash collateral deposit. See: 12 USC 371c ; (c) Section 23A. Relations with affiliates; 15 U.S.C. 6801 et seq. (l)(1); 12 USC § 1843(k), 1863, 1864, 1865, 1813(a)(3); 1813(l)(1), 12 CFR§ 225.86(b); PL 89-485 #6(h).

8. Any Delegation of authority or Power-of-attorney to represent STATE OF WISCONSIN and/or DEAN RICHARD VONGERMETEN.

9. Receipt showing paid capital transfer taxes, from loan # 0503260451 to 4402754188.

This BILL OF COMPLAINT IN EQUITY– SPECIAL CAUSATION DECLARATION IN THE NATURE OF AN AFFIDAVIT OF ADVERSE CLAIM # 22-02024-rmb

...and Certificate of Service, consisting of _35_ pages, is based on good faith, and is intended to establish standing, and venue in this instant matter. This is merely notice of intent. The following is not intended to be a complete recitation of all applicable law and/or facts, nor shall the following be deemed to constitute a waiver or relinquishment of any of my rights or remedies, all of which are hereby expressly reserved, including my right to all available remedies against U.S. BANK NAT'L ASS'N, Rushmore Loan Management Services, Planet Home Lending, LLC, employees, agents, attorneys for, including but not limited to treble equitable damages, fees, expenses and/or jury awards, "The requirement that a creditor obtain a prior judgment in order to have rights at law, or in equity in the property of the debtor is a fundamental protection in the debtor-creditor law that is rendered all the more important in the federal system by the debtor's right to jury trial on the legal claim." Grupo Mexicano de Desarrollo, S.A. v. Alliance Board Fund, Inc., 527 U.S. 308, 119 S. Ct. 1961. 144 L. Ed. 2Nd 319; Furthermore:

The party bringing the suit, (counter-claim) is master (Grantor makes the law) to decide what law he will rely upon. And any party filing a "counter-claim" is referred to as a 'plaintiff", and if the "counter-claim exists as an incident to a federal statutory cause of action, it cannot be defeated by a plea denying the merits. There are no 'demurs" or motions for "summary judgments" to a "federal statutory cause of action. Fair v. Kohler Die & Specialty Co., 228 U.S. 22 (1913). Complainant reserves all rights to reference any case law, documents, or source, without limits, since exclusive equity considers the law. Complainant accepts all oaths of office of all fiduciary officers and rules of good conduct.

EQUITY SEES AS DONE WHAT OUGHT TO BE DONE.

EQUITY WILL NOT ALLOW A STATUTE TO BE USED AS A CLOAK FOR FRAUD.

PRAYER FOR RELIEF

**Complainant/Declarant gives Judicial Notice of Conflict and Variance of Law forms, requires and demands this be treated as a Bill in Exclusive Equity to be handled "specially" since I have an operational estate outside the corporate US.** Trust indenture RF 489 562 779 US filed in bankruptcy case number 21-cv-25409-rmb naming the public & private trustees/custodians, with all my current and prior case bondings in the CRIS system, shall continue to apply to and and indemnify me under this new case number. I decree as the living man, a civilian, and Executor for the Estate, having attained age of majority, **that a full and equitable on/off ledger accounting under Special Rule of Discovery be performed, for all court bonds for and on behalf of the DEBTOR, for the alleged mortgage/"loan" cusips and for the estate itself,** so that the name and NAME be recognized under a single name decree, the trust with all misnomers extinguished, its res delivered into my hands and use, **privately, in chambers, substituting for any pretrial hearing, and that all proven claims and accounts be settled, now, the balance remitted back to the estate c/o the clerk to the Executor, with injunction barring intended sale of the property by claimants.**

Complainant/Declarant and Executor does make Oath and per 28 USC § 1746; I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, with accompanying Certificate of Service.

Executed on ___03-21-2022___     By: _Dean-Richard Von_ 
Office of Executor for the Estate

## Certificate of Service

I Dean Richard Von Germeten, do certify to having sent by certified mail (or hand delivered) the following documents: BILL OF COMPLAINT IN EQUITY– SPECIAL CAUSATION DECLARATION IN THE NATURE OF AN AFFIDAVIT OF ADVERSE CLAIM # 22-02024-rmb; 1099C Cancellation of Debt with postmark, letter from Sam Christensen, no lien/judgement on file, Intent of Sheriff sale, Summons to appear, Evidence of cusips, united States Constitution 1787 to the parties:

Suzy Lindblom, COO
Planet Home Lending, LLC
321 Research Pkwy, Ste 303          7021 1970 0002 0662 3439
Meriden, CT 06450

Terry Smith, CEO c/o Marisol Gonzalez SPOC
Rushmore Loan Management Service     7021 1970 0002 0662 3446
15480 Laguna Canyon Road, Suite 100
Irvine, California 92618

Alejandro Hoyos: Trustee
U.S. Bank National Association
8 Greenway Plaza Suite 1100          7021 1970 0002 0662 3453
Houston, TX 77046

Christopher Drout, Mark Clauss
Gray & Associates, LLC               7021 1970 0002 0662 3460
16345 W. Glendale Drive
New Berlin, Wisconsin 53151

Michael Dimand, Attorney
William Patacsil, Attorney
Marinosci Law Group, P.C.            7021 1970 0002 0662 3477
16535 W. Bluemound Rd., Suite 333
Brookfield, WI 53005

Antony J. Blinken: US Secretary of State
2201 C Street NW, Room 2206          7021 1970 0002 0662 3484
Washington, DC 20520-2204

cc: Chrissy Perl: Court Clerk, Racine County
      730 Wisconsin Avenue, Racine, Wisconsin 53403     7021 1970 0002 0662 3569

**NOTICE TO AGENT IS NOTICE TO PRINCIPAL, NOTICE TO PRINCIPAL IS NOTICE TO AGENT**

03-21-2022     By _Dean Richard Von Germet_ ©TM

DEAN R VONGERMETEN
C/O 1921 THURSTON AVENUE
RACINE, WI 53403
US

ZEN0938A
4000000020 20/1



RACINE COUNTY CIRCUIT COURT JENNIFER BEL
730 WISCONSIN AVENUE
RACINE WI 53403-1238

☐ CORRECTED (if checked)

| CREDITOR'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.<br><br>DEAN R VONGERMETEN<br>C/O 1921 THURSTON AVENUE<br>RACINE, WI 53403<br>US<br>Phone: 262-633-5404 | **1** Date of identifiable event<br>02/14/2020 | OMB No. 1545-1424<br><br>2020<br><br>Form **1099-C** | **Cancellation of Debt** |
|---|---|---|---|
| | **2** Amount of debt discharged<br>$ 53,413.30 | | |
| | **3** Interest, if included in box 2<br>$ 0.00 | | |
| CREDITOR'S TIN<br>98-1498830 | DEBTOR'S TIN | **4** Debt description<br>DEBT CANCELLATION, CLAIM THE RETURN | **Copy B**<br>**For Debtor** |
| DEBTOR'S name, Street address (including apt. no.), City or town, state or province, country, and ZIP or foreign postal code<br>RACINE COUNTY CIRCUIT COURT JENNIFER BEL<br>730 WISCONSIN AVENUE<br>RACINE, WI 53403<br>US | | **5** If checked, the debtor was personally liable for repayment of the debt ▶ ☐ | This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported. |
| Account number (see instructions)<br>2019CV001616 | | **6** Identifiable event code<br>H | **7** Fair market value of property<br>$ 65,000.00 |

Form **1099-C**　　　(keep for your records)　　　www.irs.gov/Form1099C　　　Department of the Treasury - Internal Revenue Service

## Instructions for Debtor

You received this form because a federal government agency or an applicable financial entity (a creditor) has discharged (canceled or forgiven) a debt you owed, or because an identifiable event has occurred that either is or is deemed to be a discharge of a debt of $600 or more. If a creditor has discharged a debt you owed, you are required to include the discharged amount in your income, even if it is less than $600, on the "Other income" line of your Form 1040 or 1040-SR. However, you may not have to include all of the canceled debt in your income. There are exceptions and exclusions, such as bankruptcy and insolvency. See Pub. 4681, available at IRS.gov, for more details. If an identifiable event has occurred but the debt has not actually been discharged, then include any discharged debt in your income in the year that it is actually discharged, unless an exception or exclusion applies to you in that year.

**Debtor's taxpayer identification number (TIN).** For your protection, this form may show only the last four digits of your TIN (social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN)). However, the creditor has reported your complete TIN to the IRS.

**Account number.** May show an account or other unique number the creditor assigned to distinguish your account.

**Box 1.** Shows the date the earliest identifiable event occurred or, at the creditor's discretion, the date of an actual discharge that occurred before an identifiable event. See the code in box 6.

**Box 2.** Shows the amount of debt either actually or deemed discharged. **Note:** If you don't agree with the amount, contact your creditor.

**Box 3.** Shows interest if included in the debt reported in box 2. See Pub. 4681 to see if you must include the interest in gross income.

**Box 4.** Shows a description of the debt. If box 7 is completed, box 4 also shows a description of the property.

**Box 5.** Shows whether you were personally liable for repayment of the debt when the debt was created or, if modified, at the time of the last modification. See Pub. 4681 for reporting instructions.

**Box 6.** Shows the reason your creditor has filed this form. The codes in this box are described in more detail in Pub. 4681. A—Bankruptcy; B—Other judicial debt relief; C—Statute of limitations or expiration of deficiency period; D—Foreclosure election; E—Debt relief from probate or similar proceeding; F—By agreement; G—Decision or policy to discontinue collection; or H—Other actual discharge before identifiable event.

**Box 7.** If, in the same calendar year, a foreclosure or abandonment of property occurred in connection with the cancellation of the debt, the fair market value (FMV) of the property will be shown, or you will receive a separate Form 1099-A. Generally, the gross foreclosure bid price is considered to be the FMV. For an abandonment or voluntary conveyance in lieu of foreclosure, the FMV generally is the appraised value of the property. You may have income or loss because of the acquisition or abandonment. See Pub. 4681 for information about foreclosures and abandonments. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

**Future developments.** For the latest information about developments related to Form 1099-C and its instructions, such as legislation enacted after they were published, go to www.irs.gov/Form1099C.

IMPORTANT TAX RETURN DOCUMENT ENCLOSED

DEAN R VONGERMETEN
C/O 1921 THURSTON AVENUE
RACINE, WI 53403
US

400000026 26/1

RACINE COUNTY CIRCUIT COURT JENNIFER BEL
730 WISCONSIN AVENUE
RACINE WI 53403-1238

009   HTCTZMB 53403

PRESORTED
FIRST CLASS

US POSTAGE





Office of the Clerk of Circuit Court
## Samuel A. Christensen
730 Wisconsin Avenue
Racine, WI 53403
Main: 262-636-3333
Fax: 262-636-3341
www.racinecounty.com/government/clerk-of-circuit-court
Wisconsin Circuit Court Access: www.WiCourts.gov

March 29, 2021

Peter Joseph Polinski
5735 Cavanaugh Rd, Ste 614
Marcy, NY 13403

RE:  Planet Home Lending, LLC vs. Dean R. Von Germeten et al
     Racine County Case # 19CV1616

Dear Mr. Polinski,

       We are returning your recently submitted documents and money order.  It is unclear what you're attempting to file.  There does not appear to be a judgment or lien from the above referenced case.  As such there is not a judgment or lien to satisfy or release under Wisconsin Statute.

       Additionally, please know that on February 20, 2020, Judge Michael Piontek ordered the Clerk of Circuit Court to refuse filings from the Defendant, Dean R. Von Germeten.  That would include filings on Mr. Von Germeten's behalf.  As of the date of this letter that order is still in effect.

Sincerely,

Samuel Christensen
Clerk of Circuit Court

---

### Management Staff

| | | | | | |
|---|---|---|---|---|---|
| Emily Bruno | Laurie Hardy | Kirsten Malecki | Ashley Robash | Lewis Zanon | Amy Vanderhoef |
| Administrative Deputy | Case Manager | Case Manager | Jury Coordinator | Accounting Manager | Case Manager |

# Office of the Clerk of Circuit Court
# Samuel A. Christensen

730 Wisconsin Avenue
Racine, WI 53403
Main: 262-636-3333
Fax: 262-636-3341
www.racinecounty.com/government/clerk-of-circuit-court
Wisconsin Circuit Court Access: www.WiCourts.gov

# Racine County
## WISCONSIN

6/2/2021

Dean R Vongermeten
1921 Thurston Ave
Racine WI 53403

RE:   Planet Home Lending  LLC vs. Dean R Vongermeten, et al
      Racine County Case 19CV1616

Dear Mr Vongermeten:

I am returning your recently submitted documents dated 05-21-2021 in the above
referenced case per Judge Piontek's Court Order dated 02-20-2020.

Per Judge's order, "The Clerk of Courts is directed to refuse to file or accept any
future filing from the Defendant in this matter."

Sincerely,

RACINE COUNTY CIVIL COURT

Management Staff

| Emily Bruno | Laurie Hardy | Kirsten Malecki | Ashley Robash | Amy Vanderhoef | Lewis Zanon |
| Administrative Deputy | Case Manager | Case Manager | Case Manager | Case Manager | Accounting Manager |

Case 22-02024-rmb    Doc 7    Filed 03/23/22    Page 10 of 41

FILED
03-16-2022
Clerk of Circuit Court
Racine County
2019CV001616

STATE OF WISCONSIN     CIRCUIT COURT     RACINE COUNTY
                      CIVIL DIVISION

U.S. BANK NATIONAL ASSOCIATION NOT       Case No. 2019CV001616
IN ITS INDIVIDUAL CAPACITY BUT SOLELY
AS LEGAL TITLE TRUSTEE FOR RMTP
TRUST, SERIES 2021 BKM-TT-V
Plaintiff,

DEAN R VONGERMETEN, ET. AL.             Case Code No. 30404
Defendants.                            Foreclosure of Mortgage

## NOTICE OF SHERIFF'S SALE OF REAL ESTATE

PLEASE TAKE NOTICE that by virtue of a judgment of foreclosure entered on February 14, 2020, in the amount of $53,413.40, the Sheriff of Racine County will sell the described premises at public auction as follows:

**DATE/TIME:**      May 3, 2022 at 01:30 PM

**TERMS:**      By bidding at the Sheriff's Sale, the prospective buyer is consenting to be bound by the following terms:   1) 10% down in cash, cashier's check, or bank-certified funds made payable to the Racine County Clerk of Court; 2) Sold "as is" and subject to all legal liens and encumbrances; 3) Buyer to pay applicable Wisconsin Real Estate Transfer Tax, costs of deed recording and all costs of sale within 10 days of confirmation of sheriff's sale. Failure to pay balance due will result in forfeiture of bid deposit to Plaintiff; and 4) Bidders not a party to this action are subject to the requirements of Wisconsin Statute Section 846.155.

**PLACE:**      in the lobby of the Law Enforcement Center, located at 717 Wisconsin Avenue, Racine, WI 53403

**PROPERTY LEGAL DESCRIPTION:**

Lot 15, Block 9, Guenther, Palmer and Fidler's Subdivision of part of the Northwest 1/4 of Section 20, Township 3 North, Range 23 East, in the City of Racine, Racine County, Wisconsin.

ALSO DESCRIBED AS:

Lot 15, Block 9, Guenther, Palmer and Fidler's Subdivision, according to the recorded plat thereof. Said land being in the City of Racine, Racine County, Wisconsin

**TAX KEY NO.:** 276-000015160000

**PROPERTY ADDRESS**: 1921 THURSTON AVE, RACINE, WI 53403

William Patacsil
Attorney for Plaintiff
Marinosci Law Group, P.C.
16535 W. Bluemound Rd., Suite 333
Brookfield, WI 53005
Telephone: (414) 831-9729
Facsimile: (920) 221-7719
MLGWisconsin-ALL@mlg-defaultlaw.com

      Dated this _____ day of _____, 2022.

                                       _____

                                       Racine County Sheriff's Department

THIS OFFICE IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY
INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

# AFFIDAVIT OF FACT

**STATE: OHIO**

**COUNTY: FAIRFIELD**

The undersigned, Wesley Jarvis, Trustee for CUSIPONE Trust, hereby states and confirms that he is of legal age and competent to state on belief and personal knowledge that the facts set forth herein, as duly noted below are true, correct, complete and presented in good faith, establish that:

1.  The CUSIP numbers attached for DEAN VONGERMETEN, for a mortgage account bearing number *0503260451*, were searched through independent databases, confirmed with trading desks, and at least one interest was confirmed as per the reports issued and attached as a result.

2.  The Fund Manager, or other custodian(s) of the accounts of the fund(s) may have access to internal records indicating detailed data about the percentage of interest as held for the account of DEAN VONGERMETEN.

3.  More than one fund may have an interest in the accounts of DEAN VONGERMETEN.

FURTHER AFFIANT SAYETH NOT.

Signed and sealed this _____ 2 day of _____ September _____, in the Year of our Lord, two thousand twenty-one (2021).

All Rights Reserved,

For WESLEY JARVIS

_____

Wesley J. Jarvis, Trustee

Page 1 of 2

## JURAT

State of _Ohio_                )

Subscribed and Affirmed        )

County of _Licking_            )

On _September 2_ , 2021 before me, _Deborah A Karnes_ (notary public) personally appeared **Wesley J. Jarvis** [   ] personally known to me or [   ] proved to me on the basis of satisfactory evidence, to be the person whose name is subscribed to above and acknowledged to me that he executed the same in his authorized capacity.

I now affix my signature and official seal to these affirmations.

_Deborah A Karnes_ (Signature)

Notary Public State of _Ohio_                          Seal:

My Commission Expires: _5-30-2023_

NOTARIAL SEAL

Deborah A Karnes
Notary Public, State of Ohio
My Commission Expires 05-30-23

**Your CUSIP Results are as follows:**

**DEAN VONGERMETEN (MTG██████)**
**Schwab Small-Cap Equity Fund**
Symbol:                         SWSCX
CUSIP:                          808509673

Inception Date:              7/1/2003
Net Assets:                   $598,281,000.00 as of
                                     6/10/2019
Portfolio Assets:           $598,281,000.00 as of
                                     6/10/2019

**A little about the Fund:**

Schwab Small-Cap Equity Fund is an open-end fund incorporated in the USA. The
Fund's objective is long-term capital growth. The Fund invests at least 80% of its net
assets in small-cap equity securities. The Fund will typically invest in companies that
have market capitalizations of up to $2.5 billion.

**DEAN VONGERMETEN (MTG ██████████)**
**Principal Tax Exempt Bond Fund**
Symbol:                      PTBCX
CUSIP:                       74254V877

Inception Date:              3/1/2002
Net Assets:                  $467,025,000.00 as of
                             6/10/2019
Portfolio Assets:            $467,025,000.00 as of
                             6/10/2019

**A little about the Fund:**

Principal Tax Exempt Bond Fund seeks a high level of income that is exempt from federal income tax while protecting investors' capital by investing in municipal obligations, including inverse floating rate obligations. The Fund's benchmark is Bloomberg Barclays Municipal Bond Index.



**<u>Your CUSIP Results are as follows:</u>**

**DEAN VONGERMETEN (MTG █████████ )**
**Schwab Small-Cap Equity Fund**
Symbol:             SWSCX
CUSIP:             `808509673`
**Minors**          FHEAX             █████████

Inception Date:        7/1/2003
Net Assets:            $630,556,000.00 as of
                          7/10/2021
Portfolio Assets:      $630,556,000.00 as of
                          7/10/2021

**A little about the Fund:**

Schwab Small-Cap Equity Fund is an open-end fund incorporated in the USA. The Fund's objective is long-term capital growth. The Fund invests at least 80% of its net assets in small-cap equity securities. The Fund will typically invest in companies that have market capitalizations of up to $2.5 billion.





| | | | | | | |
|---|---|---|---|---|---|---|
| S&P 500 | NASDAQ | FTSE 100 | NIKKEI 225 Future | EUR-USD | WTI Crude | |
| 11:49 | 15,298.50 | 7,095.53 | 30,000.00 | 1.1804 | 69.27 | |
| 334 | -94.8° | -58.84 | +30.00 | -0.0016 | +1.02 | |

## SWSCX:US
Schwab Small-Cap Equity Fund

# 23.2500 .50

-0.2200 -0.94%

SELECT          US.

23.4700

0

143.000 – 23.5800

## Key Statistics

| | |
|---|---|
| Days To Maturity | -- |
| 3 Month Return | |
| YTD Return | |
| 1 Year Return | |
| 3 Year Return | |
| 5 Year Return | |
| Nav (On 09/07/2021) | |
| Total Assets (M USD) (On 09/07/2021) | |
| Inception Date | |

| | |
|---|---|
| Premium/Discount | -- |
| Average 52-week Premium | |
| Last Dividend Reported | |
| Dividend Indicated Gross Yield | |
| Front Load Fee | |
| Back Load Fee | |
| Redemption Fee | |
| 12B-1 Fee | |
| Current Mgmt Fee | |

We fight every day to develop
life-changing technology.

Learn More

## CONSTITUTION OF THE UNITED STATES OF AMERICA—1787[1]

WE THE PEOPLE of the United States, in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America.

### ARTICLE. I.

SECTION. 1. All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives.

SECTION. 2. [1]The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.

[2]No Person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen.

[3]Representatives and direct Taxes shall be apportioned among the several States which may be included within this Union, according to their respective Numbers, which shall be determined by adding to the whole Number of free Persons, including those bound to Service for a Term of Years, and excluding Indians not taxed, three fifths of all other Persons.[2] The actual Enumeration shall be made within three Years after the first Meeting of the Congress of the United States, and within every subsequent Term of ten Years, in such Manner as they shall by Law direct. The Number of Representatives shall not exceed one for every thirty Thousand, but each State shall have at Least one Representative; and until such enumeration shall be made, the State of New Hampshire shall be entitled to chuse three, Massachusetts eight, Rhode-Island and Providence Plantations one, Connecticut five, New-York six, New Jersey four, Pennsylvania eight, Delaware one, Maryland six, Virginia ten, North Carolina five, South Carolina five, and Georgia three.

[4]When vacancies happen in the Representation from any State, the Executive Authority thereof shall issue Writs of Election to fill such Vacancies.

[5]The House of Representatives shall chuse their Speaker and other Officers; and shall have the sole Power of Impeachment.

SECTION. 3. [1]The Senate of the United States shall be composed of two Senators from each State, chosen by the Legislature thereof,[3] for six Years; and each Senator shall have one Vote.

[1]This text of the Constitution follows the engrossed copy signed by Gen. Washington and the deputies from 12 States. The small superior figures preceding the paragraphs designate clauses, and were not in the original and have no reference to footnotes.

In May 1785, a committee of Congress made a report recommending an alteration in the Articles of Confederation, but no action was taken on it, and it was left to the State Legislatures to proceed in the matter. In January 1786, the Legislature of Virginia passed a resolution providing for the appointment of five commissioners, who, or any three of them, should meet such commissioners as might be appointed by the other States of the Union, at a time and place to be agreed upon, to take into consideration the trade of the United States; to consider how far a uniform system in their commercial regulations may be necessary to their common interest and their permanent harmony; and to report to the several States such an act, relative to this great object, as, when ratified by them, will enable the United States in Congress effectually to provide for the same. The Virginia commissioners, after some correspondence, fixed the first Monday in September as the time, and the city of Annapolis as the place for the meeting, but only four other States were represented, viz: Delaware, New York, New Jersey, and Pennsylvania; the commissioners appointed by Massachusetts, New Hampshire, North Carolina, and Rhode Island failed to attend. Under the circumstances of so partial a representation, the commissioners present agreed upon a report, (drawn by Mr. Hamilton of New York,) expressing their unanimous conviction that it might essentially tend to advance the interests of the Union if the States by whom they were respectively delegated would concur, and use their endeavors to procure the concurrence of the other States, in the appointment of commissioners to meet at Philadelphia on the Second Monday of May following, to take into consideration the situation of the United States; to devise such further provisions as should appear to them necessary to render the Constitution of the Federal Government adequate to the exigencies of the Union; and to report such an act for that purpose to the United States in Congress assembled, as, when agreed to by them and afterwards confirmed by the Legislatures of every State, would effectually provide for the same.

Congress, on the 21st of February, 1787, adopted a resolution in favor of a convention, and the Legislatures of those States which had not already done so (with the exception of Rhode Island) promptly appointed delegates. On the 25th of May, seven States having convened, George Washington, of Virginia, was unanimously elected President, and the consideration of the proposed constitution was commenced. On the 17th of September, 1787, the Constitution as engrossed and agreed upon was signed by all the members present, except Mr. Gerry of Massachusetts, and Messrs. Mason and Randolph, of Virginia. The president of the convention transmitted it to Congress, with a resolution stating how the proposed Federal Government should be put in operation, and an explanatory letter. Congress, on the 28th of September, 1787, directed the Constitution so framed, with the resolutions and letter concerning the same, to "be transmitted to the several Legislatures in order to be submitted to a convention of delegates chosen in each State by the people thereof, in conformity to the resolves of the convention."

On the 4th of March, 1789, the day which had been fixed for commencing the operations of Government under the new Constitution, it had been ratified by the conventions chosen in each State to consider it, as follows: Delaware, December 7, 1787; Pennsylvania, December 12, 1787; New Jersey, December 18, 1787; Georgia, January 2, 1788; Connecticut, January 9, 1788; Massachusetts, February 6, 1788; Maryland, April 28, 1788; South Carolina, May 23, 1788; New Hampshire, June 21, 1788; Virginia, June 25, 1788; and New York, July 26, 1788.

The President informed Congress, on the 28th of January, 1790, that North Carolina had ratified the Constitution November 21, 1789; and he informed Congress on the 1st of June, 1790, that Rhode Island had ratified the Constitution May 29, 1790. Vermont, in convention, ratified the Constitution January 10, 1791, and was, by an act of Congress approved February 18, 1791, "received and admitted into this Union as a new and entire member of the United States."

[2]The part of this clause relating to the mode of apportionment of representatives among the several States has been affected by section 2 of amendment XIV and as to taxes on incomes without apportionment by amendment XVI.

[3]This clause has been affected by clause 1 of amendment XVII.

[2]Immediately after they shall be assembled in Consequence of the first Election, they shall be divided as equally as may be into three Classes. The Seats of the Senators of the first Class shall be vacated at the Expiration of the second Year, of the second Class at the Expiration of the fourth Year, and of the third Class at the Expiration of the sixth Year, so that one third may be chosen every second Year; and if Vacancies happen by Resignation, or otherwise, during the Recess of the Legislature of any State, the Executive thereof may make temporary Appointments until the next Meeting of the Legislature, which shall then fill such Vacancies.[4]

[3]No Person shall be a Senator who shall not have attained to the Age of thirty Years, and been nine Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State for which he shall be chosen.

[4]The Vice President of the United States shall be President of the Senate, but shall have no Vote, unless they be equally divided.

[5]The Senate shall chuse their other Officers, and also a President pro tempore, in the Absence of the Vice President, or when he shall exercise the Office of President of the United States.

[6]The Senate shall have the sole Power to try all Impeachments. When sitting for that Purpose, they shall be on Oath or Affirmation. When the President of the United States is tried, the Chief Justice shall preside: And no Person shall be convicted without the Concurrence of two thirds of the Members present.

[7]Judgment in Cases of Impeachment shall not extend further than to removal from Office, and disqualification to hold and enjoy any Office of honor, Trust or Profit under the United States: but the Party convicted shall nevertheless be liable and subject to Indictment, Trial, Judgment and Punishment, according to Law.

SECTION. 4. [1]The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

[2]The Congress shall assemble at least once in every Year, and such Meeting shall be on the first Monday in December,[3] unless they shall by Law appoint a different Day.

SECTION. 5. [1]Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members, and a Majority of each shall constitute a Quorum to do Business; but a smaller Number may adjourn from day to day, and may be authorized to compel the Attendance of absent Members, in such Manner, and under such Penalties as each House may provide.

[2]Each House may determine the Rules of its Proceedings, punish its Members for disorderly Behaviour, and, with the Concurrence of two thirds, expel a Member.

[3]Each House shall keep a Journal of its Proceedings, and from time to time publish the same, excepting such Parts as may in their

Judgment require Secrecy; and the Yeas and Nays of the Members of either House on any question shall, at the Desire of one fifth of those Present, be entered on the Journal.

[4]Neither House, during the Session of Congress, shall, without the Consent of the other, adjourn for more than three days, nor to any other Place than that in which the two Houses shall be sitting.

SECTION. 6. [1]The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States.[6] They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.

[2]No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been encreased during such time; and no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office.

SECTION. 7. [1]All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills.

[2]Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; If he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it. If after such Reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law. But in all such Cases the Votes of both Houses shall be determined by yeas and Nays, and the Names of the Persons voting for and against the Bill shall be entered on the Journal of each House respectively. If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a Law.

[3]Every Order, Resolution, or Vote to which the Concurrence of the Senate and House of Representatives may be necessary (except on a question of Adjournment) shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the Case of a Bill.

SECTION. 8. [1]The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Ex-

[2] This clause has been affected by clause 2 of amendment XVIII.
[3] This clause has been affected by amendment XX.
[6] This clause has been affected by amendment XXVII.

cises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;

²To borrow Money on the credit of the United States;

³To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;

⁴To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States;

⁵To coin Money, regulate the Value thereof, and of foreign Coin, and fix the Standard of Weights and Measures;

⁶To provide for the Punishment of counterfeiting the Securities and current Coin of the United States;

⁷To establish Post Offices and post Roads;

⁸To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries;

⁹To constitute Tribunals inferior to the supreme Court;

¹⁰To define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations;

¹¹To declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water;

¹²To raise and support Armies, but no Appropriation of Money to that Use shall be for a longer Term than two Years;

¹³To provide and maintain a Navy;

¹⁴To make Rules for the Government and Regulation of the land and naval Forces;

¹⁵To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions;

¹⁶To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress;

¹⁷To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings;—And

¹⁸To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.

SECTION. 9. ¹The Migration or Importation of such Persons as any of the States now existing shall think proper to admit, shall not be prohibited by the Congress prior to the Year one thousand eight hundred and eight, but a Tax or duty may be imposed on such Importation, not exceeding ten dollars for each Person.

²The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.

³No Bill of Attainder or ex post facto Law shall be passed.

⁴No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken.⁷

⁵No Tax or Duty shall be laid on Articles exported from any State.

⁶No Preference shall be given by any Regulation of Commerce or Revenue to the Ports of one State over those of another: nor shall Vessels bound to, or from, one State, be obliged to enter, clear, or pay Duties in another.

⁷No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law; and a regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time.

⁸No Title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State.

SECTION. 10. ¹No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

²No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing it's inspection Laws: and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Controul of the Congress.

³No State shall, without the Consent of Congress, lay any Duty of Tonnage, keep Troops, or Ships of War in time of Peace, enter into any Agreement or Compact with another State, or with a foreign Power, or engage in War, unless actually invaded, or in such imminent Danger as will not admit of delay.

ARTICLE. II.

SECTION. 1. ¹The executive Power shall be vested in a President of the United States of America. He shall hold his Office during the Term of four Years, and, together with the Vice President, chosen for the same Term, be elected, as follows

²Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

³The Electors shall meet in their respective States, and vote by Ballot for two Persons, of whom one at least shall not be an Inhabitant of the same State with themselves. And they shall

---

⁷This clause has been affected by amendment XVI.

make a List of all the Persons voted for, and of the Number of Votes for each; which List they shall sign and certify, and transmit sealed to the Seat of the Government of the United States, directed to the President of the Senate. The President of the Senate shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted. The Person having the greatest Number of Votes shall be the President, if such Number be a Majority of the whole Number of Electors appointed; and if there be more than one who have such Majority, and have an equal Number of Votes, then the House of Representatives shall immediately chuse by Ballot one of them for President; and if no Person have a Majority, then from the five highest on the List the said House shall in like Manner chuse the President. But in chusing the President, the Votes shall be taken by States, the Representation from each State having one Vote; A quorum for this Purpose shall consist of a Member or Members from two thirds of the States, and a Majority of all the States shall be necessary to a Choice. In every Case, after the Choice of the President, the Person having the greatest Number of Votes of the Electors shall be the Vice President. But if there should remain two or more who have equal Votes, the Senate shall chuse from them by Ballot the Vice President.[4]

[4] The Congress may determine the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States.

[5] No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President; neither shall any Person be eligible to that Office who shall not have attained to the Age of thirty five Years, and been fourteen Years a Resident within the United States.

[6] In Case of the Removal of the President from Office, or of his Death, Resignation, or Inability to discharge the Powers and Duties of the said Office,[9] the Same shall devolve on the Vice President, and the Congress may by Law provide for the Case of Removal, Death, Resignation or Inability, both of the President and Vice President, declaring what Officer shall then act as President, and such Officer shall act accordingly, until the Disability be removed, or a President shall be elected.

[7] The President shall, at stated Times, receive for his Services, a Compensation, which shall neither be encreased nor diminished during the Period for which he shall have been elected, and he shall not receive within that Period any other Emolument from the United States, or any of them.

[8] Before he enter on the Execution of his Office, he shall take the following Oath or Affirmation:—"I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my Ability, preserve, protect and defend the Constitution of the United States."

SECTION. 2. [1] The President shall be Commander in Chief of the Army and Navy of the United States, and of the Militia of the several States, when called into the actual Service of the United States; he may require the Opinion, in writing, of the principal Officer in each of the executive Departments, upon any Subject relating to the Duties of their respective Offices, and he shall have Power to grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment.

[2] He shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur; and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

[3] The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session.

SECTION. 3. He shall from time to time give to the Congress Information of the State of the Union, and recommend to their Consideration such Measures as he shall judge necessary and expedient; he may, on extraordinary Occasions, convene both Houses, or either of them, and in Case of Disagreement between them, with Respect to the Time of Adjournment, he may adjourn them to such Time as he shall think proper; he shall receive Ambassadors and other public Ministers; he shall take Care that the Laws be faithfully executed, and shall Commission all the Officers of the United States.

SECTION. 4. The President, Vice President and all civil Officers of the United States, shall be removed from Office on Impeachment for, and Conviction of, Treason, Bribery, or other high Crimes and Misdemeanors.

### ARTICLE. III.

SECTION. 1. The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

SECTION. 2. [1] The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;[10]—between Citizens of different States,—between Citizens of the same State claiming Lands under Grants of different

---

[3] This clause has been superseded by amendment XII.
[9] This clause has been affected by amendment XXV.

[10] This clause has been affected by amendment XI.

States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

[2]In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction. In all the other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.

[3]The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.

SECTION. 3. [1]Treason against the United States, shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid and Comfort. No Person shall be convicted of Treason unless on the Testimony of two Witnesses to the same overt Act, or on Confession in open Court.

[2]The Congress shall have Power to declare the Punishment of Treason, but no Attainder of Treason shall work Corruption of Blood, or Forfeiture except during the Life of the Person attainted.

### ARTICLE. IV.

SECTION. 1. Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

SECTION. 2. [1]The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States.

[2]A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

[3]No Person held to Service or Labour in one State, under the Laws thereof, escaping into another, shall, in Consequence of any Law or Regulation therein, be discharged from such Service or Labour, but shall be delivered up on Claim of the Party to whom such Service or Labour may be due.[11]

SECTION. 3. [1]New States may be admitted by the Congress into this Union; but no new State shall be formed or erected within the Jurisdiction of any other State; nor any State be formed by the Junction of two or more States, or Parts of States, without the Consent of the Legislatures of the States concerned as well as of the Congress.

[2]The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.

SECTION. 4. The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence.

### ARTICLE. V.

The Congress, whenever two thirds of both Houses shall deem it necessary, shall propose Amendments to this Constitution, or, on the Application of the Legislatures of two thirds of the several States, shall call a Convention for proposing Amendments, which, in either Case, shall be valid to all Intents and Purposes, as Part of this Constitution, when ratified by the Legislatures of three fourths of the several States, or by Conventions in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Congress: Provided that no Amendment which may be made prior to the Year One thousand eight hundred and eight shall in any Manner affect the first and fourth Clauses in the Ninth Section of the first Article; and that no State, without its Consent, shall be deprived of its equal Suffrage in the Senate.

### ARTICLE. VI.

[1]All Debts contracted and Engagements entered into, before the Adoption of this Constitution, shall be as valid against the United States under this Constitution, as under the Confederation.

[2]This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

[3]The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States.

### ARTICLE. VII.

The Ratification of the Conventions of nine States, shall be sufficient for the Establishment of this Constitution between the States so ratifying the Same.

DONE in Convention by the Unanimous Consent of the States present the Seventeenth Day of September in the Year of our Lord one thousand seven hundred and Eighty seven and of the Independence of the United States of America the Twelfth IN WITNESS whereof We have hereunto subscribed our Names.

G°. WASHINGTON—*Presid*.
*and deputy from Virginia*

[Signed also by the deputies of twelve States.]
*New Hampshire*
JOHN LANGDON

---

[11]This clause has been affected by amendment XIII

NICHOLAS GILMAN

*Massachusetts*
NATHANIEL GORHAM
RUFUS KING

*Connecticut*
W<sup>M</sup>. SAM<sup>L</sup>. JOHNSON
ROGER SHERMAN

*New York*
ALEXANDER HAMILTON

*New Jersey*
WIL: LIVINGSTON
DAVID BREARLEY.
W<sup>M</sup>. PATERSON.
JONA: DAYTON

*Pennsylvania*
B FRANKLIN
THOMAS MIFFLIN
ROB<sup>T</sup> MORRIS
GEO. CLYMER
THO<sup>S</sup>. FITZSIMONS
JARED INGERSOLL
JAMES WILSON
GOUV MORRIS

*Delaware*
GEO: READ
GUNNING BEDFORD jun
JOHN DICKINSON
RICHARD BASSETT
JACO: BROOM

*Maryland*
JAMES M<sup>c</sup>HENRY
DAN OF S<sup>T</sup> THO<sup>S</sup>. JENIFER
DAN<sup>L</sup> CARROLL.

*Virginia*
JOHN BLAIR—
JAMES MADISON Jr.

*North Carolina*
W<sup>M</sup> BLOUNT
RICH<sup>D</sup> DOBBS SPAIGHT.
HU WILLIAMSON

*South Carolina*
J. RUTLEDGE
CHARLES COTESWORTH PINCKNEY
CHARLES PINCKNEY
PIERCE BUTLER.

*Georgia*
WILLIAM FEW
ABR BALDWIN

Attest WILLIAM JACKSON *Secretary*

Jean Richard Von Cent
Wisconsin

ARTICLES IN ADDITION TO, AND AMEND-
MENT OF, THE CONSTITUTION OF THE
UNITED STATES OF AMERICA. PROPOSED
BY CONGRESS, AND RATIFIED BY THE
LEGISLATURES OF THE SEVERAL
STATES, PURSUANT TO THE FIFTH ARTI-
CLE OF THE ORIGINAL CONSTITUTION [2]

## ARTICLE [I.] [15]

Congress shall make no law respecting an es-
tablishment of religion, or prohibiting the free
exercise thereof; or abridging the freedom of
speech, or of the press; or the right of the people
peaceably to assemble, and to petition the Gov-
ernment for a redress of grievances.

## ARTICLE [II.]

A well regulated Militia, being necessary to
the security of a free State, the right of the peo-
ple to keep and bear Arms, shall not be in-
fringed.

## ARTICLE [III.]

No Soldier shall, in time of peace be quartered
in any house, without the consent of the Owner,
nor in time of war, but in a manner to be pre-
scribed by law.

## ARTICLE [IV.]

The right of the people to be secure in their
persons, houses, papers, and effects, against un-
reasonable searches and seizures, shall not be
violated, and no Warrants shall issue, but upon
probable cause, supported by Oath or affirma-
tion, and particularly describing the place to be
searched, and the persons or things to be seized.

## ARTICLE [V.]

No person shall be held to answer for a capital,
or otherwise infamous crime, unless on a pre-
sentment or indictment of a Grand Jury, except
in cases arising in the land or naval forces, or in
the Militia, when in actual service in time of
War or public danger; nor shall any person be
subject for the same offence to be twice put in
jeopardy of life or limb; nor shall be compelled
in any criminal case to be a witness against
himself, nor be deprived of life, liberty, or prop-
erty, without due process of law; nor shall pri-
vate property be taken for public use, without
just compensation.

## ARTICLE [VI.]

In all criminal prosecutions, the accused shall
enjoy the right to a speedy and public trial, by
an impartial jury of the State and district
wherein the crime shall have been committed,
which district shall have been previously ascer-
tained by law, and to be informed of the nature
and cause of the accusation; to be confronted
with the witnesses against him; to have compul-
sory process for obtaining witnesses in his favor,
and to have the Assistance of Counsel for his de-
fence.

[2] The first ten amendments to the Constitution of the United States (and ten others, one of which failed of ratification and the other which later became the 27th amendment) were proposed to the legislatures of the several States by the First Congress on September 25, 1789. The first ten amendments were rati-

fied by the following States, and the notifications of ratification by the Governors thereof were successively communicated by the President to Congress: New Jersey, November 20, 1789; Maryland, December 19, 1789; North Carolina, December 22, 1789; South Carolina, January 19, 1790; New Hampshire, January 25, 1790; Delaware, January 28, 1790; New York, February 24, 1790; Pennsylvania, March 10, 1790; Rhode Island, June 7, 1790; Vermont, November 3, 1791; and Virginia, December 15, 1791.

Ratification was completed on December 15, 1791.

The amendments were subsequently ratified by the legislatures of Massachusetts, March 2, 1939; Georgia, March 18, 1939; and Connecticut, April 19, 1939.

[15] Only the 13th, 14th, 15th, and 16th articles of amendment had numbers assigned to them at the time of ratification.

### ARTICLE [VII.]

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

### ARTICLE [VIII.]

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

### ARTICLE [IX.]

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

### ARTICLE [X.]

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

### [ARTICLE XI.]

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

#### PROPOSAL AND RATIFICATION

The eleventh amendment to the Constitution of the United States was proposed to the legislatures of the several States by the Third Congress, on the 4th of March 1794; and was declared in a message from the President to Congress, dated the 8th of January 1798, to have been ratified by the legislatures of three-fourths of the States. The dates of ratification were: New York, March 27, 1794; Rhode Island, March 31, 1794; Connecticut, May 8, 1794; New Hampshire, June 16, 1794; Massachusetts, June 26, 1794; Vermont, between October 9, 1794 and November 9, 1794; Virginia, November 18, 1794; Georgia, November 29, 1794; Kentucky, December 7, 1794; Maryland, December 26, 1794; Delaware, January 23, 1795; North Carolina, February 7, 1795.

Ratification was completed on February 7, 1795.

The amendment was subsequently ratified by South Carolina on December 4, 1797. New Jersey and Pennsylvania did not take action on the amendment.

### [ARTICLE XII.]

The Electors shall meet in their respective states, and vote by ballot for President and Vice-President, one of whom, at least, shall not be an inhabitant of the same state with themselves; they shall name in their ballots the person voted for as President, and in distinct ballots the person voted for as Vice-President, and they shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice-President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the Senate;—The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted;—The person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of Electors appointed; and if no person have such majority, then from the persons having the highest numbers not exceeding three on the list of those voted for as President, the House of Representatives shall choose immediately, by ballot, the President. But in choosing the President, the votes shall be taken by states, the representation from each state having one vote; a quorum for this purpose shall consist of a member or members from two-thirds of the states, and a majority of all the states shall be necessary to a choice. And if the House of Representatives shall not choose a President whenever the right of choice shall devolve upon them, before the fourth day of March next following, then the Vice-President shall act as President, as in the case of the death or other constitutional disability of the President.[14] The person having the greatest number of votes as Vice-President, shall be the Vice-President, if such number be a majority of the whole number of Electors appointed, and if no person have a majority, then from the two highest numbers on the list, the Senate shall choose the Vice-President; a quorum for the purpose shall consist of two-thirds of the whole number of Senators, and a majority of the whole number shall be necessary to a choice. But no person constitutionally ineligible to the office of President shall be eligible to that of Vice-President of the United States.

#### PROPOSAL AND RATIFICATION

The twelfth amendment to the Constitution of the United States was proposed to the legislatures of the several States by the Eighth Congress, on the 9th of December, 1803, in lieu of the original third paragraph of the first section of the second article; and was declared in a proclamation of the Secretary of State, dated the 25th of September, 1804, to have been ratified by the legislatures of 13 of the 17 States. The dates of ratification were: North Carolina, December 21, 1803; Maryland, December 24, 1803; Kentucky, December 27, 1803; Ohio, December 30, 1803; Pennsylvania, January 5, 1804; Vermont, January 30, 1804; Virginia, February 3, 1804; New York, February 10, 1804; New Jersey, February 22, 1804; Rhode Island, March 12, 1804; South Carolina, May 15, 1804; Georgia, May 19, 1804; New Hampshire, June 15, 1804.

Ratification was completed on June 15, 1804.

The amendment was subsequently ratified by Tennessee, July 27, 1804.

The amendment was rejected by Delaware, January 18, 1804; Massachusetts, February 3, 1804; Connecticut, at its session begun May 10, 1804.

### ARTICLE XIII.

SECTION 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

SECTION 2. Congress shall have power to enforce this article by appropriate legislation.

#### PROPOSAL AND RATIFICATION

The thirteenth amendment to the Constitution of the United States was proposed to the legislatures of the several States by the Thirty eighth Congress, on the 31st day of January, 1865, and was declared, in a procla-

---

[14] This sentence has been superseded by section 3 of amendment XX.

mation of the Secretary of State, dated the 18th of December, 1865, to have been ratified by the legislatures of twenty-seven of the thirty-six States. The dates of ratification were: Illinois, February 1, 1865; Rhode Island, February 2, 1865; Michigan, February 2, 1865; Maryland, February 3, 1865; New York, February 3, 1865; Pennsylvania, February 3, 1865; West Virginia, February 3, 1865; Missouri, February 6, 1865; Maine, February 7, 1865; Kansas, February 7, 1865; Massachusetts, February 7, 1865; Virginia, February 9, 1865; Ohio, February 10, 1865; Indiana, February 13, 1865; Nevada, February 16, 1865; Louisiana, February 17, 1865; Minnesota, February 23, 1865; Wisconsin, February 24, 1865; Vermont, March 9, 1865; Tennessee, April 7, 1865; Arkansas, April 14, 1865; Connecticut, May 4, 1865; New Hampshire, July 1, 1865; South Carolina, November 13, 1865; Alabama, December 2, 1865; North Carolina, December 4, 1865; Georgia, December 6, 1865.

Ratification was completed on December 6, 1865.

The amendment was subsequently ratified by Oregon, December 8, 1865; California, December 19, 1865; Florida, December 28, 1865 (Florida again ratified on June 9, 1868, upon its adoption of a new constitution); Iowa, January 15, 1866; New Jersey, January 23, 1866 (after having rejected the amendment on March 16, 1865); Texas, February 18, 1870; Delaware, February 12, 1901 (after having rejected the amendment on February 8, 1865); Kentucky, March 18, 1976 (after having rejected it on February 24, 1865); Mississippi, March 16, 1995 (after having rejected it on December 4, 1865).

## Article XIV.

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 2. Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age,[b] and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

Section 3. No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or

given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

Section 4. The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

### Proposal and Ratification

The fourteenth amendment to the Constitution of the United States was proposed to the legislatures of the several States by the Thirty-ninth Congress, on the 13th of June, 1866. It was declared, in a certificate of the Secretary of State dated July 28, 1868 to have been ratified by the legislatures of 28 of the 37 States. The dates of ratification were: Connecticut, June 25, 1866; New Hampshire, July 6, 1866; Tennessee, July 19, 1866; New Jersey, September 11, 1866 (subsequently the legislature rescinded its ratification, and on March 24, 1868, readopted its resolution of ratification over the Governor's veto, and on Nov. 12, 1980, expressed support for the amendment); Oregon, September 19, 1866 (and rescinded its ratification on October 16, 1868, but ratified the amendment on April 25, 1973); Vermont, October 30, 1866; Ohio, January 11, 1867 (and rescinded its ratification on January 15, 1868, but ratified the amendment on March 12, 2003); New York January 10, 1867; Kansas, January 11, 1867; Illinois, January 15, 1867; West Virginia, January 16, 1867; Michigan, January 16, 1867; Minnesota, January 16, 1867; Maine, January 19, 1867; Nevada, January 22, 1867; Indiana, January 23, 1867; Missouri, January 25, 1867; Rhode Island, February 7, 1867; Wisconsin, February 7, 1867; Pennsylvania, February 12, 1867; Massachusetts, March 20, 1867; Nebraska, June 15, 1867; Iowa, March 16, 1868; Arkansas, April 6, 1868; Florida, June 9, 1868; North Carolina, July 4, 1868 (after having rejected it on December 14, 1866); Louisiana, July 9, 1868 (after having rejected it on February 6, 1867); South Carolina, July 9, 1868 (after having rejected it on December 20, 1866).

Ratification was completed on July 9, 1868.

The amendment was subsequently ratified by Alabama, July 13, 1868; Georgia, July 21, 1868 (after having rejected it on November 9, 1866); Virginia, October 8, 1869 (after having rejected it on January 9, 1867); Mississippi, January 17, 1870; Texas, February 18, 1870 (after having rejected it on October 27, 1866); Delaware, February 12, 1901 (after having rejected it on February 8, 1867); Maryland, April 4, 1959 (after having rejected it on March 23, 1867); California, May 6, 1959; Kentucky, March 18, 1976 (after having rejected it on January 8, 1867).

## Article XV.

Section 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude.

Section 2. The Congress shall have power to enforce this article by appropriate legislation.

### Proposal and Ratification

The fifteenth amendment to the Constitution of the United States was proposed to the legislatures of the several States by the Fortieth Congress, on the 26th of February, 1869, and was declared, in a proclamation of

---

[b] See amendment XIX and section 1 of amendment XXVI.

Case 22-02024-rmb      Doc 7      Filed 03/23/22      Page 28 of 41

the Secretary of State, dated March 30, 1870, to have been ratified by the legislatures of twenty-nine of the thirty-seven States. The dates of ratification were: Nevada, March 1, 1869; West Virginia, March 3, 1869; Illinois, March 5, 1869; Louisiana, March 5, 1869; North Carolina, March 5, 1869; Michigan, March 8, 1869; Wisconsin, March 9, 1869; Maine, March 11, 1869; Massachusetts, March 12, 1869; Arkansas, March 15, 1869; South Carolina, March 15, 1869; Pennsylvania, March 25, 1869; New York, April 14, 1869 (and the legislature of the same State passed a resolution January 5, 1870, to withdraw its consent to it, which action it rescinded on March 30, 1870); Indiana, May 14, 1869; Connecticut, May 19, 1869; Florida, June 14, 1869; New Hampshire, July 1, 1869; Virginia, October 8, 1869; Vermont, October 20, 1869; Missouri, January 7, 1870; Minnesota, January 13, 1870; Mississippi, January 17, 1870; Rhode Island, January 18, 1870; Kansas, January 19, 1870; Ohio, January 27, 1870 (after having rejected it on April 30, 1869); Georgia, February 2, 1870; Iowa, February 3, 1870.

Ratification was completed on February 3, 1870, unless the withdrawal of ratification by New York was effective; in which event ratification was completed on February 17, 1870, when Nebraska ratified.

The amendment was subsequently ratified by Texas, February 18, 1870; New Jersey, February 15, 1871 (after having rejected it on February 7, 1870); Delaware, February 12, 1901 (after having rejected it on March 18, 1869); Oregon, February 24, 1959; California, April 3, 1962 (after having rejected it on January 28, 1870); Kentucky, March 18, 1976 (after having rejected it on March 12, 1869); Tennessee, April 2, 1997 (after having rejected it on November 16, 1869).

The amendment was approved by the Governor of Maryland, May 7, 1973; Maryland having previously rejected it on February 26, 1870.

### Article XVI.

The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration.

#### Proposal and Ratification

The sixteenth amendment to the Constitution of the United States was proposed to the legislatures of the several States by the Sixty-first Congress on the 12th of July, 1909, and was declared, in a proclamation of the Secretary of State, dated the 25th of February, 1913, to have been ratified by 36 of the 48 States. The dates of ratification were: Alabama, August 10, 1909; Kentucky, February 8, 1910; South Carolina, February 19, 1910; Illinois, March 1, 1910; Mississippi, March 7, 1910; Oklahoma, March 10, 1910; Maryland, April 8, 1910; Georgia, August 3, 1910; Texas, August 16, 1910; Ohio, January 19, 1911; Idaho, January 20, 1911; Oregon, January 23, 1911; Washington, January 26, 1911; Montana, January 30, 1911; Indiana, January 30, 1911; California, January 31, 1911; Nevada, January 31, 1911; South Dakota, February 3, 1911; Nebraska, February 9, 1911; North Carolina, February 11, 1911; Colorado, February 15, 1911; North Dakota, February 17, 1911; Kansas, February 18, 1911; Michigan, February 23, 1911; Iowa, February 24, 1911; Missouri, March 16, 1911; Maine, March 31, 1911; Tennessee, April 7, 1911; Arkansas, April 22, 1911 (after having rejected it earlier); Wisconsin, May 26, 1911; New York, July 12, 1911; Arizona, April 6, 1912; Minnesota, June 11, 1912; Louisiana, June 28, 1912; West Virginia, January 31, 1913; New Mexico, February 3, 1913.

Ratification was completed on February 3, 1913.

The amendment was subsequently ratified by Massachusetts, March 4, 1913; New Hampshire, March 7, 1913 (after having rejected it on March 2, 1911).

The amendment was rejected (and not subsequently ratified) by Connecticut, Rhode Island, and Utah.

### [Article XVII.]

The Senate of the United States shall be composed of two Senators from each State, elected by the people thereof, for six years; and each Senator shall have one vote. The electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislatures.

When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies: *Provided*, That the legislature of any State may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct.

This amendment shall not be so construed as to affect the election or term of any Senator chosen before it becomes valid as part of the Constitution.

#### Proposal and Ratification

The seventeenth amendment to the Constitution of the United States was proposed to the legislatures of the several States by the Sixty-second Congress on the 13th of May, 1912, and was declared, in a proclamation of the Secretary of State, dated the 31st of May, 1913, to have been ratified by the legislatures of 36 of the 48 States. The dates of ratification were: Massachusetts, May 22, 1912; Arizona, June 3, 1912; Minnesota, June 10, 1912; New York, January 15, 1913; Kansas, January 17, 1913; Oregon, January 23, 1913; North Carolina, January 25, 1913; California, January 28, 1913; Michigan, January 28, 1913; Iowa, January 30, 1913; Montana, January 30, 1913; Idaho, January 31, 1913; West Virginia, February 4, 1913; Colorado, February 5, 1913; Nevada, February 6, 1913; Texas, February 7, 1913; Washington, February 7, 1913; Wyoming, February 8, 1913; Arkansas, February 11, 1913; Maine, February 11, 1913; Illinois, February 13, 1913; North Dakota, February 14, 1913; Wisconsin, February 18, 1913; Indiana, February 19, 1913; New Hampshire, February 19, 1913; Vermont, February 19, 1913; South Dakota, February 19, 1913; Oklahoma, February 24, 1913; Ohio, February 25, 1913; Missouri, March 7, 1913; New Mexico, March 13, 1913; Nebraska, March 14, 1913; New Jersey, March 17, 1913; Tennessee, April 1, 1913; Pennsylvania, April 2, 1913; Connecticut, April 8, 1913.

Ratification was completed on April 8, 1913.

The amendment was subsequently ratified by Louisiana, June 11, 1914; Alabama, April 11, 2002; Delaware, July 1, 2010; Maryland, April 16, 2012.

The amendment was rejected by Utah (and not subsequently ratified) on February 26, 1913.

### Article [XVIII].[16]

Section 1. After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

Sec. 2. The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation.

Sec. 3. This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by the legislatures of the several States, as provided in the Constitution, within seven years from the date of the submission hereof to the States by the Congress.

#### Proposal and Ratification

The eighteenth amendment to the Constitution of the United States was proposed to the legislatures of the

[16] Repealed by section 1 of amendment XXI.

several States by the Sixty-fifth Congress, on the 18th of December, 1917, and was declared, in a proclamation of the Secretary of State, dated the 29th of January, 1919, to have been ratified by the legislatures of 36 of the 48 States. The dates of ratification were: Mississippi, January 8, 1918; Virginia, January 11, 1918; Kentucky, January 14, 1918; North Dakota, January 25, 1918; South Carolina, January 29, 1918; Maryland, February 13, 1918; Montana, February 19, 1918; Texas, March 4, 1918; Delaware, March 18, 1918; South Dakota, March 20, 1918; Massachusetts, April 2, 1918; Arizona, May 24, 1918; Georgia, June 26, 1918; Louisiana, August 3, 1918; Florida, December 3, 1918; Michigan, January 2, 1919; Ohio, January 7, 1919; Oklahoma, January 7, 1919; Idaho, January 8, 1919; Maine, January 8, 1919; West Virginia, January 9, 1919; California, January 13, 1919; Tennessee, January 13, 1919; Washington, January 13, 1919; Arkansas, January 14, 1919; Kansas, January 14, 1919; Alabama, January 15, 1919; Colorado, January 15, 1919; Iowa, January 15, 1919; New Hampshire, January 15, 1919; Oregon, January 15, 1919; Nebraska, January 16, 1919; North Carolina, January 16, 1919; Utah, January 16, 1919; Missouri, January 16, 1919; Wyoming, January 16, 1919.

Ratification was completed on January 16, 1919. See *Dillon v. Gloss*, 256 U.S. 368, 376 (1921)

The amendment was subsequently ratified by Minnesota on January 17, 1919; Wisconsin, January 17, 1919; New Mexico, January 20, 1919; Nevada, January 21, 1919; New York, January 29, 1919; Vermont, January 29, 1919; Pennsylvania, February 25, 1919; and New Jersey, March 9, 1922.

The amendment was rejected (and not subsequently ratified by Connecticut and Rhode Island.

### ARTICLE [XIX.]

The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex.

Congress shall have power to enforce this article by appropriate legislation.

#### PROPOSAL AND RATIFICATION

The nineteenth amendment to the Constitution of the United States was proposed to the legislatures of the several States by the Sixty-sixth Congress, on the 4th of June, 1919, and was declared, in a proclamation of the Secretary of State, dated the 26th of August, 1920, to have been ratified by the legislatures of 36 of the 48 States. The dates of ratification were: Illinois, June 10, 1919 (and that State readopted its resolution of ratification June 17, 1919), Michigan, June 10, 1919; Wisconsin, June 10, 1919; Kansas, June 16, 1919; New York, June 16, 1919; Ohio, June 16, 1919; Pennsylvania, June 24, 1919; Massachusetts, June 25, 1919; Texas, June 28, 1919; Iowa, July 2, 1919; Missouri, July 3, 1919; Arkansas, July 28, 1919; Montana, August 2, 1919; Nebraska, August 2, 1919; Minnesota, September 8, 1919; New Hampshire, September 10, 1919; Utah, October 2, 1919; California, November 1, 1919; Maine, November 5, 1919; North Dakota, December 1, 1919; South Dakota, December 4, 1919; Colorado, December 15, 1919; Kentucky, January 6, 1920; Rhode Island, January 6, 1920; Oregon, January 13, 1920; Indiana, January 16, 1920; Wyoming, January 27, 1920; Nevada, February 7, 1920; New Jersey, February 9, 1920; Idaho, February 11, 1920; Arizona, February 12, 1920; New Mexico, February 21, 1920; Oklahoma, February 28, 1920; West Virginia, March 10, 1920; Washington, March 22, 1920; Tennessee, August 18, 1920.

Ratification was completed on August 18, 1920.

The amendment was subsequently ratified by Connecticut on September 14, 1920 (and that State reaffirmed on September 21, 1920); Vermont, February 8, 1921; Delaware, March 6, 1923 (after having rejected it on June 2, 1920); Maryland, March 29, 1941 (after having rejected it on February 24, 1920, ratification certified on February 25, 1958); Virginia, February 21, 1952 (after having rejected it on February 12, 1920); Alabama, Sep-

tember 8, 1953 (after having rejected it on September 22, 1919); Florida, May 13, 1969; South Carolina, July 1, 1969 (after having rejected it on January 28, 1920, ratification certified on August 22, 1973); Georgia, February 20, 1970 (after having rejected it on July 24, 1919); Louisiana, June 11, 1970 (after having rejected it on July 1, 1920); North Carolina, May 6, 1971; Mississippi, March 22, 1984 (after having rejected it on March 29, 1920).

### ARTICLE [XX.]

SECTION 1. The terms of the President and Vice President shall end at noon on the 20th day of January, and the terms of Senators and Representatives at noon on the 3d day of January, of the years in which such terms would have ended if this article had not been ratified; and the terms of their successors shall then begin.

SEC. 2. The Congress shall assemble at least once in every year, and such meeting shall begin at noon on the 3d day of January, unless they shall by law appoint a different day.

SEC. 3. If, at the time fixed for the beginning of the term of the President, the President elect shall have died, the Vice President elect shall become President. If a President shall not have been chosen before the time fixed for the beginning of his term, or if the President elect shall have failed to qualify, then the Vice President elect shall act as President until a President shall have qualified; and the Congress may by law provide for the case wherein neither a President elect nor a Vice President elect shall have qualified, declaring who shall then act as President, or the manner in which one who is to act shall be selected, and such person shall act accordingly until a President or Vice President shall have qualified.

SEC. 4. The Congress may by law provide for the case of the death of any of the persons from whom the House of Representatives may choose a President whenever the right of choice shall have devolved upon them, and for the case of the death of any of the persons from whom the Senate may choose a Vice President whenever the right of choice shall have devolved upon them.

SEC. 5. Sections 1 and 2 shall take effect on the 15th day of October following the ratification of this article.

SEC. 6. This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by the legislatures of three-fourths of the several States within seven years from the date of its submission.

#### PROPOSAL AND RATIFICATION

The twentieth amendment to the Constitution was proposed to the legislatures of the several states by the Seventy-Second Congress, on the 2d day of March, 1932, and was declared, in a proclamation by the Secretary of State, dated on the 6th day of February, 1933, to have been ratified by the legislatures of 36 of the 48 States. The dates of ratification were: Virginia, March 4, 1932; New York, March 11, 1932; Mississippi, March 16, 1932; Arkansas, March 17, 1932; Kentucky, March 17, 1932; New Jersey, March 21, 1932; South Carolina, March 25, 1932; Michigan, March 31, 1932; Maine, April 1, 1932; Rhode Island, April 14, 1932; Illinois, April 21, 1932; Louisiana, June 22, 1932; West Virginia, July 30, 1932; Pennsylvania, August 11, 1932; Indiana, August 15, 1932; Texas, September 7, 1932; Alabama, September 13, 1932; California, January 4, 1933; North Carolina, January 5, 1933; North Dakota, January 9, 1933; Minnesota, January 12, 1933; Arizona, January 13, 1933; Montana, January 13, 1933; Nebraska, January 13, 1933; Oklahoma, Jan-

uary 13, 1933; Kansas, January 16, 1933; Oregon, January 16, 1933; Delaware, January 19, 1933; Washington, January 19, 1933; Wyoming, January 19, 1933; Iowa, January 20, 1933; South Dakota, January 20, 1933; Tennessee, January 20, 1933; Idaho, January 21, 1933; New Mexico, January 21, 1933; Georgia, January 23, 1933; Missouri, January 23, 1933; Ohio, January 23, 1933; Utah, January 23, 1933.

Ratification was completed on January 23, 1933.

The amendment was subsequently ratified by Massachusetts on January 24, 1933; Wisconsin, January 24, 1933; Colorado, January 24, 1933; Nevada, January 26, 1933; Connecticut, January 27, 1933; New Hampshire, January 31, 1933; Vermont, February 2, 1933; Maryland, March 24, 1933; Florida, April 26, 1933.

### ARTICLE [XXI.]

SECTION 1. The eighteenth article of amendment to the Constitution of the United States is hereby repealed.

SECTION 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

SECTION 3. This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by conventions in the several States, as provided in the Constitution, within seven years from the date of the submission hereof to the States by the Congress.

PROPOSAL AND RATIFICATION

The twenty-first amendment to the Constitution was proposed to the several states by the Seventy-Second Congress, on the 20th day of February, 1933, and was declared, in a proclamation by the Secretary of State, dated on the 5th day of December, 1933, to have been ratified by 36 of the 48 States. The dates of ratification were: Michigan, April 10, 1933; Wisconsin, April 25, 1933; Rhode Island, May 8, 1933; Wyoming, May 25, 1933; New Jersey, June 1, 1933; Delaware, June 24, 1933; Indiana, June 26, 1933; Massachusetts, June 26, 1933; New York, June 27, 1933; Illinois, July 10, 1933; Iowa, July 10, 1933; Connecticut, July 11, 1933; New Hampshire, July 11, 1933; California, July 24, 1933; West Virginia, July 25, 1933; Arkansas, August 1, 1933; Oregon, August 7, 1933; Alabama, August 8, 1933; Tennessee, August 11, 1933; Missouri, August 29, 1933; Arizona, September 5, 1933; Nevada, September 5, 1933; Vermont, September 23, 1933; Colorado, September 26, 1933; Washington, October 3, 1933; Minnesota, October 10, 1933; Idaho, October 17, 1933; Maryland, October 18, 1933; Virginia, October 25, 1933; New Mexico, November 2, 1933; Florida, November 14, 1933; Texas, November 24, 1933; Kentucky, November 27, 1933; Ohio, December 5, 1933; Pennsylvania, December 5, 1933; Utah, December 5, 1933.

Ratification was completed on December 5, 1933.

The amendment was subsequently ratified by Maine, on December 6, 1933, and by Montana, on August 6, 1934.

The amendment was rejected (and not subsequently ratified) by South Carolina, on December 4, 1933.

### ARTICLE [XXII.]

SECTION 1. No person shall be elected to the office of the President more than twice, and no person who has held the office of President, or acted as President, for more than two years of a term to which some other person was elected President shall be elected to the office of the President more than once. But this Article shall not apply to any person holding the office of President when this Article was proposed by the Congress, and shall not prevent any person who may be holding the office of President, or acting as President, during the term within which this Article becomes operative from holding the office of President or acting as President during the remainder of such term.

SEC. 2. This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by the legislatures of three-fourths of the several States within seven years from the date of its submission to the States by the Congress.

PROPOSAL AND RATIFICATION

This amendment was proposed to the legislatures of the several States by the Eightieth Congress on Mar. 21, 1947 by House Joint Res. No. 27, and was declared by the Administrator of General Services, on Mar. 1, 1951, to have been ratified by the legislatures of 36 of the 48 States. The dates of ratification were: Maine, March 31, 1947; Michigan, March 31, 1947; Iowa, April 1, 1947; Kansas, April 1, 1947; New Hampshire, April 1, 1947; Delaware, April 2, 1947; Illinois, April 3, 1947; Oregon, April 3, 1947; Colorado, April 12, 1947; California, April 15, 1947; New Jersey, April 15, 1947; Vermont, April 15, 1947; Ohio, April 16, 1947; Wisconsin, April 16, 1947; Pennsylvania, April 29, 1947; Connecticut, May 21, 1947; Missouri, May 22, 1947; Nebraska, May 23, 1947; Virginia, January 28, 1948; Mississippi, February 12, 1948; New York, March 9, 1948; South Dakota, January 21, 1949; North Dakota, February 25, 1949; Louisiana, May 17, 1950; Montana, January 25, 1951; Indiana, January 29, 1951; Idaho, January 30, 1951; New Mexico, February 12, 1951; Wyoming, February 12, 1951; Arkansas, February 15, 1951; Georgia, February 17, 1951; Tennessee, February 20, 1951; Texas, February 22, 1951; Nevada, February 26, 1951; Utah, February 26, 1951; Minnesota, February 27, 1951.

Ratification was completed on February 27, 1951.

The amendment was subsequently ratified by North Carolina on February 28, 1951; South Carolina, March 13, 1951; Maryland, March 14, 1951; Florida, April 16, 1951; Alabama, May 4, 1951.

The amendment was rejected (and not subsequently ratified) by Oklahoma in June 1947, and Massachusetts on June 9, 1949.

CERTIFICATION OF VALIDITY

Publication of the certifying statement of the Administrator of General Services that the amendment had become valid was made on Mar. 1, 1951. F.R. Doc. 51–2940, 16 F.R. 2019.

### ARTICLE [XXIII.]

SECTION 1. The District constituting the seat of Government of the United States shall appoint in such manner as the Congress may direct:

A number of electors of President and Vice President equal to the whole number of Senators and Representatives in Congress to which the District would be entitled if it were a State, but in no event more than the least populous State; they shall be in addition to those appointed by the States, but they shall be considered, for the purposes of the election of President and Vice President, to be electors appointed by a State; and they shall meet in the District and perform such duties as provided by the twelfth article of amendment.

SEC. 2. The Congress shall have power to enforce this article by appropriate legislation.

PROPOSAL AND RATIFICATION

This amendment was proposed by the Eighty-sixth Congress on June 17, 1960 and was declared by the Administrator of General Services on Apr. 3, 1961, to have

been ratified by 38 of the 50 States. The dates of ratification were: Hawaii, June 23, 1959 (and that State made a technical correction to its resolution on June 30, 1959); Massachusetts, August 22, 1960; New Jersey, December 19, 1960; New York, January 17, 1961; California, January 19, 1961; Oregon, January 27, 1961; Maryland, January 30, 1961; Idaho, January 31, 1961; Maine, January 31, 1961; Minnesota, January 31, 1961; New Mexico, February 1, 1961; Nevada, February 2, 1961; Montana, February 6, 1961; South Dakota, February 6, 1961; Colorado, February 8, 1961; Washington, February 9, 1961; West Virginia, February 9, 1961; Alaska, February 10, 1961; Wyoming, February 13, 1961; Delaware, February 20, 1961; Utah, February 21, 1961; Wisconsin, February 21, 1961; Pennsylvania, February 28, 1961; Indiana, March 3, 1961; North Dakota, March 3, 1961; Tennessee, March 6, 1961; Michigan, March 8, 1961; Connecticut, March 9, 1961; Arizona, March 10, 1961; Illinois, March 14, 1961; Nebraska, March 15, 1961; Vermont, March 15, 1961; Iowa, March 16, 1961; Missouri, March 20, 1961; Oklahoma, March 21, 1961; Rhode Island, March 22, 1961; Kansas, March 29, 1961; Ohio, March 29, 1961.

Ratification was completed on March 29, 1961.

The amendment was subsequently ratified by New Hampshire on March 30, 1961 (when that State annulled and then repeated its ratification of March 29, 1961); Alabama, March 16, 2002.

The amendment was rejected (and not subsequently ratified) by Arkansas on January 24, 1961.

CERTIFICATION OF VALIDITY

Publication of the certifying statement of the Administrator of General Services that the amendment had become valid was made on Apr. 3, 1961, F.R. Doc. 61–3017, 26 F.R. 2808.

ARTICLE [XXIV.]

SECTION 1. The right of citizens of the United States to vote in any primary or other election for President or Vice President, for electors for President or Vice President, or for Senator or Representative in Congress, shall not be denied or abridged by the United States or any State by reason of failure to pay any poll tax or other tax.

SEC. 2. The Congress shall have power to enforce this article by appropriate legislation.

PROPOSAL AND RATIFICATION

This amendment was proposed by the Eighty-seventh Congress by Senate Joint Resolution No. 29, which was approved by the Senate on Mar. 27, 1962, and by the House of Representatives on Aug. 27, 1962. It was declared by the Administrator of General Services on Feb. 4, 1964, to have been ratified by the legislatures of 38 of the 50 States.

This amendment was ratified by the following States: Illinois, November 14, 1962; New Jersey, December 3, 1962; Oregon, January 25, 1963; Montana, January 28, 1963; West Virginia, February 1, 1963; New York, February 4, 1963; Maryland, February 6, 1963; California, February 7, 1963; Alaska, February 11, 1963; Rhode Island, February 14, 1963; Indiana, February 19, 1963; Utah, February 20, 1963; Michigan, February 20, 1963; Colorado, February 21, 1963; Ohio, February 27, 1963; Minnesota, February 27, 1963; New Mexico, March 5, 1963; Hawaii, March 6, 1963; North Dakota, March 7, 1963; Idaho, March 8, 1963; Washington, March 14, 1963; Vermont, March 15, 1963; Nevada, March 19, 1963; Connecticut, March 20, 1963; Tennessee, March 21, 1963; Pennsylvania, March 25, 1963; Wisconsin, March 26, 1963; Kansas, March 28, 1963; Massachusetts, March 28, 1963; Nebraska, April 4, 1963; Florida, April 18, 1963; Iowa, April 24, 1963; Delaware, May 1, 1963; Missouri, May 13, 1963; New Hampshire, June 12, 1963; Kentucky, June 27, 1963; Maine, January 16, 1964; South Dakota, January 23, 1964.

Ratification was completed on January 23, 1964.

The amendment was subsequently ratified by Virginia, February 25, 1977; North Carolina, May 3, 1989; Texas, May 22, 2009.

The amendment was rejected by Mississippi (and not subsequently ratified) on December 20, 1962.

CERTIFICATION OF VALIDITY

Publication of the certifying statement of the Administrator of General Services that the amendment had become valid was made on Feb. 5, 1964, F.R. Doc. 64–1229, 29 F.R. 1715.

ARTICLE [XXV.]

SECTION 1. In case of the removal of the President from office or of his death or resignation, the Vice President shall become President.

SEC. 2. Whenever there is a vacancy in the office of the Vice President, the President shall nominate a Vice President who shall take office upon confirmation by a majority vote of both Houses of Congress.

SEC. 3. Whenever the President transmits to the President pro tempore of the Senate and the Speaker of the House of Representatives his written declaration that he is unable to discharge the powers and duties of his office, and until he transmits to them a written declaration to the contrary, such powers and duties shall be discharged by the Vice President as Acting President.

SEC. 4. Whenever the Vice President and a majority of either the principal officers of the executive departments or of such other body as Congress may by law provide, transmit to the President pro tempore of the Senate and the Speaker of the House of Representatives their written declaration that the President is unable to discharge the powers and duties of his office, the Vice President shall immediately assume the powers and duties of the office as Acting President.

Thereafter, when the President transmits to the President pro tempore of the Senate and the Speaker of the House of Representatives his written declaration that no inability exists, he shall resume the powers and duties of his office unless the Vice President and a majority of either the principal officers of the executive department[17] or of such other body as Congress may by law provide, transmit within four days to the President pro tempore of the Senate and the Speaker of the House of Representatives their written declaration that the President is unable to discharge the powers and duties of his office. Thereupon Congress shall decide the issue, assembling within forty-eight hours for that purpose if not in session. If the Congress, within twenty-one days after receipt of the latter written declaration, or, if Congress is not in session, within twenty-one days after Congress is required to assemble, determines by two-thirds vote of both Houses that the President is unable to discharge the powers and duties of his office, the Vice President shall continue to discharge the same as Acting President; otherwise, the President shall resume the powers and duties of his office.

PROPOSAL AND RATIFICATION

This amendment was proposed by the Eighty-ninth Congress by Senate Joint Resolution No. 1, which was

----

[17] So in original. Probably should be "departments".

approved by the Senate on Feb. 19, 1955, and by the House of Representatives, in amended form, on Apr. 13, 1965. The House of Representatives agreed to a Conference Report on June 30, 1965, and the Senate agreed to the Conference Report on July 6, 1965. It was declared by the Administrator of General Services, on Feb. 23, 1967, to have been ratified by the legislatures of 39 of the 50 States.

This amendment was ratified by the following States: Nebraska, July 12, 1965; Wisconsin, July 13, 1965; Oklahoma, July 16, 1965; Massachusetts, August 9, 1965; Pennsylvania, August 18, 1965; Kentucky, September 15, 1965; Arizona, September 22, 1965; Michigan, October 5, 1965; Indiana, October 20, 1965; California, October 21, 1965; Arkansas, November 4, 1965; New Jersey, November 29, 1965; Delaware, December 7, 1965; Utah, January 17, 1966; West Virginia, January 20, 1966; Maine, January 24, 1966; Rhode Island, January 28, 1966; Colorado, February 3, 1966; New Mexico, February 3, 1966; Kansas, February 8, 1966; Vermont, February 10, 1966; Alaska, February 18, 1966; Idaho, March 2, 1966; Hawaii, March 3, 1966; Virginia, March 8, 1966; Mississippi, March 10, 1966; New York, March 14, 1966; Maryland, March 23, 1966; Missouri, March 30, 1966; New Hampshire, June 13, 1966; Louisiana, July 5, 1966; Tennessee, January 12, 1967; Wyoming, January 25, 1967; Washington, January 26, 1967; Iowa, January 26, 1967; Oregon, February 2, 1967; Minnesota, February 10, 1967; Nevada, February 10, 1967.

Ratification was completed on February 10, 1967.

The amendment was subsequently ratified by Connecticut, February 14, 1967; Montana, February 15, 1967; South Dakota, March 6, 1967; Ohio, March 7, 1967; Alabama, March 14, 1967; North Carolina, March 22, 1967; Illinois, March 22, 1967; Texas, April 25, 1967; Florida, May 25, 1967.

CERTIFICATION OF VALIDITY

Publication of the certifying statement of the Administrator of General Services that the amendment had become valid was made on Feb. 25, 1967, F.R. Doc. 67–2208, 32 F.R. 3287.

ARTICLE [XXVI.]

SECTION 1. The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.

SEC. 2. The Congress shall have power to enforce this article by appropriate legislation.

PROPOSAL AND RATIFICATION

This amendment was proposed by the Ninety-second Congress by Senate Joint Resolution No. 7, which was approved by the Senate on Mar. 10, 1971, and by the House of Representatives on Mar. 23, 1971. It was declared by the Administrator of General Services on July 5, 1971, to have been ratified by the legislatures of 39 of the 50 States.

This amendment was ratified by the following States: Connecticut, March 23, 1971; Delaware, March 23, 1971; Minnesota, March 23, 1971; Tennessee, March 23, 1971; Washington, March 23, 1971; Hawaii, March 24, 1971; Massachusetts, March 24, 1971; Montana, March 29, 1971; Arkansas, March 30, 1971; Idaho, March 30, 1971; Iowa, March 30, 1971; Nebraska, April 2, 1971; New Jersey, April 3, 1971; Kansas, April 7, 1971; Michigan, April 7, 1971; Alaska, April 8, 1971; Maryland, April 8, 1971; Indiana, April 8, 1971; Maine, April 9, 1971; Vermont, April 16, 1971; Louisiana, April 17, 1971; California, April 19, 1971; Colorado, April 27, 1971; Pennsylvania, April 27, 1971; Texas, April 27, 1971; South Carolina, April 28, 1971; West Virginia, April 28, 1971; New Hampshire, May 13, 1971; Arizona, May 14, 1971; Rhode Island, May 27, 1971; New York, June 2, 1971; Oregon, June 4, 1971; Missouri, June 14, 1971; Wisconsin, June 22, 1971; Illinois, June 29, 1971; Alabama, June 30, 1971; Ohio, June 30, 1971; North Carolina, July 1, 1971; Oklahoma, July 1, 1971.

Ratification was completed on July 1, 1971.

The amendment was subsequently ratified by Virginia, July 8, 1971; Wyoming, July 8, 1971; Georgia, October 4, 1971.

CERTIFICATION OF VALIDITY

Publication of the certifying statement of the Administrator of General Services that the amendment had become valid was made on July 7, 1971, F.R. Doc. 71–9691, 36 F.R. 12725.

ARTICLE [XXVII.]

No law, varying the compensation for the services of the Senators and Representatives, shall take effect, until an election of Representatives shall have intervened.

PROPOSAL AND RATIFICATION

This amendment, being the second of twelve articles proposed by the First Congress on Sept. 25, 1789, was declared by the Archivist of the United States on May 18, 1992, to have been ratified by the legislatures of 40 of the 50 States.

This amendment was ratified by the following States: Maryland, December 19, 1789; North Carolina, December 22, 1789; South Carolina, January 19, 1790; Delaware, January 28, 1790; Vermont, November 3, 1791; Virginia, December 15, 1791; Ohio, May 6, 1873; Wyoming, March 6, 1978; Maine, April 27, 1983; Colorado, April 22, 1984; South Dakota, February 21, 1985; New Hampshire, March 7, 1985; Arizona, April 3, 1985; Tennessee, May 23, 1985; Oklahoma, July 10, 1985; New Mexico, February 14, 1986; Indiana, February 24, 1986; Utah, February 25, 1986; Arkansas, March 6, 1987; Montana, March 17, 1987; Connecticut, May 13, 1987; Wisconsin, July 15, 1987; Georgia, February 2, 1988; West Virginia, March 10, 1988; Louisiana, July 7, 1988; Iowa, February 9, 1989; Idaho, March 23, 1989; Nevada, April 26, 1989; Alaska, May 6, 1989; Oregon, May 19, 1989; Minnesota, May 22, 1989; Texas, May 25, 1989; Kansas, April 5, 1990; Florida, May 31, 1990; North Dakota, March 25, 1991; Alabama, May 5, 1992; Missouri, May 5, 1992; Michigan, May 7, 1992; New Jersey, May 7, 1992.

Ratification was completed on May 7, 1992.

The amendment was subsequently ratified by Illinois on May 12, 1992; California, June 26, 1992; Rhode Island, June 10, 1993; Hawaii, April 29, 1994; Washington, April 6, 1995; Kentucky, March 21, 1996.

CERTIFICATION OF VALIDITY

Publication of the certifying statement of the Archivist of the United States that the amendment had become valid was made on May 18, 1992, F.R. Doc. 92–11951, 57 F.R. 21187.

PROPOSED AMENDMENTS TO THE CONSTITUTION NOT RATIFIED BY THE STATES

In addition to the 27 amendments that have been ratified by the required three-fourths of the States, six other amendments have been submitted to the States but have not been ratified by them.

Beginning with the proposed Eighteenth Amendment, Congress has customarily included a provision requiring ratification within seven years from the time of the submission to the States. The Supreme Court in *Coleman v. Miller*, 307 U.S. 433 (1939), declared that the question of the reasonableness of the time within which a sufficient number of States must act is a political question to be determined by the Congress.

In 1789, twelve proposed articles of amendment were submitted to the States. Of these, Articles III–XII were ratified and became the first ten

amendments to the Constitution, popularly known as the Bill of Rights. In 1992, proposed Article II was ratified and became the 27th amendment to the Constitution. Proposed Article I which was not ratified is as follows:

"ARTICLE THE FIRST

"After the first enumeration required by the first article of the Constitution, there shall be one Representative for every thirty thousand, until the number shall amount to one hundred, after which the proportion shall be so regulated by Congress, that there shall be not less than one hundred Representatives, nor less than one Representative for every forty thousand persons, until the number of Representatives shall amount to two hundred; after which the proportion shall be so regulated by Congress, that there shall not be less than two hundred Representatives, nor more than one Representative for every fifty thousand persons."

Thereafter, in the 2d session of the Eleventh Congress, the Congress proposed the following article of amendment to the Constitution relating to acceptance by citizens of the United States of title of nobility from any foreign government.

The proposed amendment, which was not ratified by three-fourths of the States, is as follows:

*Resolved by the Senate and House of Representatives of the United States of America, in Congress assembled,* Two thirds of both Houses concurring, that the following section be submitted to the legislatures of the several states, which when ratified by the legislatures of three fourths of the states, shall be valid and binding, as a part of the constitution of the United States:

If any citizen of the United States shall accept, claim, receive or retain any title of nobility or honor, or shall, without the consent of Congress, accept and retain any present, pension office or emolument of any kind whatever, from any emperor, king, prince or foreign power, such person shall cease to be a citizen of the United States, and shall be incapable of holding any office of trust or profit under them, or either of them.

The following amendment to the Constitution relating to slavery was proposed in the 2d session of the Thirty-sixth Congress on March 2, 1861, when it passed the Senate, having previously passed the House on February 28, 1861. It is interesting to note in this connection that this is the only proposed (and not ratified) amendment to the Constitution to have been signed by the President. The President's signature is considered unnecessary because of the constitutional provision that on the concurrence of two-thirds of both Houses of Congress the proposal shall be submitted to the States for ratification.

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That the following article be proposed to the Legislatures of the several States as an amendment to the Constitution of the United States, which, when ratified by three-fourths of said Legislatures, shall be valid, to all intents and purposes, as part of the said Constitution, viz:

"ARTICLE THIRTEEN

"No amendment shall be made to the Constitution which will authorize or give to Congress the power to abolish or interfere, within any State, with the domestic institutions thereof, including that of persons held to labor or service by the laws of said State."

A child labor amendment was proposed by the 1st session of the Sixty-eighth Congress on June 2, 1924, when it passed the Senate, having previously passed the House on April 26, 1924. The proposed amendment, which has been ratified by 28 States, to date, is as follows:

JOINT RESOLUTION PROPOSING AN AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled (two-thirds of each House concurring therein),* That the following article is proposed as an amendment to the Constitution of the United States, which, when ratified by the legislatures of three-fourths of the several States, shall be valid to all intents and purposes as a part of the Constitution:

"ARTICLE

"SECTION 1. The Congress shall have power to limit, regulate, and prohibit the labor of persons under eighteen years of age.

"SECTION 2. The power of the several States is unimpaired by this article except that the operation of State laws shall be suspended to the extent necessary to give effect to legislation enacted by the Congress."

An amendment relative to equal rights for men and women was proposed by the 2d session of the Ninety-second Congress on March 22, 1972, when it passed the Senate, having previously passed the House on October 12, 1971. The seven-year deadline for ratification of the proposed amendment was extended to June 30, 1982, by the 2d session of the Ninety-fifth Congress. The proposed amendment, which was not ratified by three-fourths of the States by June 30, 1982, is as follows:

JOINT RESOLUTION PROPOSING AN AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES RELATIVE TO EQUAL RIGHTS FOR MEN AND WOMEN

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled (two-thirds of each House concurring therein),* That the following article is proposed as an amendment to the Constitution of the United States, which shall be valid to all intents and purposes as part of the Constitution when ratified by the legislatures of three-fourths of the several States within seven years from the date of its submission by the Congress:

"ARTICLE—

"SECTION 1. Equality of rights under the law shall not be denied or abridged by the United States or by any State on account of sex.

"SEC. 2. The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

"SEC. 3. This amendment shall take effect two years after the date of ratification."

An amendment relative to voting rights for the District of Columbia was proposed by the 2d session of the Ninety-fifth Congress on August 22, 1978, when it passed the Senate, having pre-

viously passed the House on March 2, 1978. The proposed amendment, which was not ratified by three-fourths of the States within the specified seven-year period, is as follows:

JOINT RESOLUTION PROPOSING AN AMENDMENT TO THE CONSTITUTION TO PROVIDE FOR REPRESENTATION OF THE DISTRICT OF COLUMBIA IN THE CONGRESS.

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled (two-thirds of each House concurring therein),* That the following article is proposed as an amendment to the Constitution of the United States, which shall be valid to all intents and purposes as part of the Constitution when ratified by the legislatures of three-fourths of the several States within seven years from the date of its submission by the Congress:

"ARTICLE—

"SECTION 1. For purposes of representation in the Congress, election of the President and Vice President, and article V of this Constitution, the District constituting the seat of government of the United States shall be treated as though it were a State.

"SEC. 2. The exercise of the rights and powers conferred under this article shall be by the people of the District constituting the seat of government, and as shall be provided by the Congress.

"SEC. 3. The twenty-third article of amendment to the Constitution of the United States is hereby repealed.

"SEC. 4. This article shall be inoperative, unless it shall have been ratified as an amendment to the Constitution by the legislatures of three-fourths of the several States within seven years from the date of its submission."

In re:                                                   Chapter 13

DEAN RICHARD VONGERMETEN ,                               Case No. 21−25409−rmb
              Debtor.
DEAN RICHARD VONGERMETEN,                                All documents regarding this matter must be identified by both
                                                         adversary and bankruptcy case numbers.
                          Plaintiff,

      v.                                                 Adversary No. 22−02024−rmb

Suzy Lindbolm COO,
Terry Smith CEO,
Alejandro Hoyos: Trustee,
Christopher Drout,
Mark Clauss,
Michael Dimand,
William Patacsil,

                   Defendants.

### SUMMONS AND NOTICE OF PRETRIAL CONFERENCE
### IN AN ADVERSARY PROCEEDING

   YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this
summons with the clerk of the bankruptcy court within 30 days after the date of the issuance of this summons, except
that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days. At
the same time, you must also serve a copy of the motion or answer upon the attorney for the Plaintiff. If you make a
motion, your time to answer is governed by Bankruptcy Rule 7012.

| *Clerk, United States Bankruptcy Court* | *Name and Address of Attorney for the Plaintiff* |
|---|---|
| United States Courthouse, Room 126 | DEAN RICHARD VONGERMETEN |
| 517 East Wisconsin Avenue | 1921 Thurston Ave. |
| Milwaukee, WI 53202 | Racine, WI 53403 |

   YOU ARE NOTIFIED that a pretrial conference of the proceeding commenced by the complaint will be held at the
following time and place.

| | |
|---|---|
| Date: April 26, 2022 | |
| Time: 02:00 PM(Central) | |
| Place: | Telephone Conference. **To appear by telephone, you must call the Court conference line at 1−888−808−6929, and enter access code 5457889 before the scheduled hearing time.** The Court may already be in session, so please wait quietly on the telephone for your case to be called. |

   **IF YOU FAIL TO RESPOND TO THE SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR
CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY
DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

Dated: March 14, 2022                                    **JANET L. MEDLOCK**
                                                         Clerk of Court



(over)

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:                                        Chapter 13

DEAN RICHARD VONGERMETEN ,                    Case No. 21−25409−rmb
                    Debtor.
DEAN RICHARD VONGERMETEN,                     All documents regarding this matter must be identified by both
                                              adversary and bankruptcy case numbers.
                    Plaintiff,

     v.                                       Adversary No. 22−02024−rmb

Suzy Lindbolm COO,
Terry Smith CEO,
Alejandro Hoyos: Trustee,
Christopher Drout,
Mark Clauss,
Michael Dimand,
William Patacsil,

                    Defendants.

**CERTIFICATE OF SERVICE REGARDING SUMMONS IN AN ADVERSARY PROCEEDING**

I, *Dean Richard Von Germet* (name), certify that I am, and at all times during the service of
process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.
I further certify that the service of this summons and a copy of the complaint was made on
03-21-2022 (date) by one of the following methods:

☐ *Mail Service:* Regular, first class United States mail, and postage fully prepaid. *(List names/addresses below.)*

☐ *Personal Service*: By leaving the process with defendant or with an officer or agent of defendant. *(List
names/addresses below.)*

☐ *Residence Service:* By leaving the process with an adult. *(List names/addresses below.)*

☒ *Certified Mail Service on an Insured Depository Institution:* By sending the process by certified mail addressed
to the following officer of the defendant. *(List names/addresses below.)*

☐ *Publication*: The defendant was served as described in the space below.

☐ *State Law:* The defendant was served pursuant to the laws of the State of Wisconsin (U. S. state), as
described in the space below.

*LIST NAMES AND ADDRESSES OR BRIEF DESCRIPTION OF HOW DEFENDANT WAS SERVED:*

See attached Bill of Complaint in Equity...
Certificate of Service listing the parties

*Under penalty of perjury, I declare that the foregoing is true and correct.*

By: *Dean Richard Von Germet*   03-21-2022        c/o 1921 Thurston Avenue
Signature                    Date                Business Address

Dean Richard Von Germeten                        Racine Wisconsin [53403]
Printed Name                                     Business City, State, and Zip

U.S. POSTAGE PAID
PCM LG ENV
RACINE, WI
53406
MAR 21, 22
AMOUNT
$15.71
R2303S101368-6

1000   53202

SPECIAL CAUSE

SPECIAL CAUSE

PRIVATE

PRIVATE

PRIVATE

Rachel M. Bliss: Chancellor
c/o Janet Medlock: Court Clerk
US Bankruptcy Court Eastern
District of Wisconsin #126
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

Office of the Executor
DEAN RICHARD VONGERMETEN
1981 Thurston Avenue
Racine, Wisconsin





REGISTERED MAIL™

RF 489 563 730 US

Re: Adverse Case
# 22-02024-rmb